## WAIT v. McKEE.

Opinion delivered May 16, 1910.

1. CORPORATIONS—STOCK SUBSCRIPTION—LIABILITY.—Where the directors of an insurance company issued paid-up stock to the stockholders upon payment of 50 per cent. thereof, the stockholders will be liable for the full amount of their stock subscriptions, notwithstanding the illegal credit, but the directors will be liable only to the extent that loss was suffered on account of their failure to enforce the liability of such stockholders. (Page 128.)

2. SAME—LIABILITY OF DIRECTORS.—Where a stock insurance company was organized for the purpose of taking over the business of a mutual insurance company, and assuming its liabilities, the directors of the stock insurance company will not be liable for the debts of the new company where they acted as reasonably prudent business men in taking over the business and assuming the debts of the old company. (Page 128.)

3. SAME—LIABILITY OF DIRECTORS.—The directors of an insurance company are not liable for having paid a valid debt of the company at a time when it was insolvent, since, if the payment was an unlawful preference, the remedy was against the preferred creditor. (Page 129.)

4. SAME—MISAPPROPRIATION OF FUNDS—LIABILITY OF DIRECTORS.—The directors of an insurance company are liable to its creditors for misappropriating its funds in purchasing the worthless stock subscription notes of its shareholders. (Page 129.)

5. SAME—DIRECTORS—DELEGATION OF AUTHORITY.—The directors of a corporation are responsible to the corporation, its stockholders and creditors, for the management of its affairs, and cannot shirk their duty by delegating it to another. (Page 129.)

6. BILLS AND NOTES—ACCOMMODATION PAPER—PAYMENT.—Where indorsed paper is paid or settled by the accommodated party, all liability of the accommodation party is extinguished, though the paper is subsequently indorsed by the latter without recourse. (Page 129.)

7. SAME—ACCOMMODATION INDORSER—DISCHARGE.—The purchase of notes indorsed for accommodation by the accommodated party is equivalent to a payment, so far as the accommodation indorser is concerned. (Page 130.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Rose, Hemingway, Cantrell & Loughborough* and *John T. Hicks,* for appellant.

The directors of a corporation cannot be charged with the consequences of an honest error of judgment or accidental mistake in the exercise of their discretionary powers. 1 Morawetz on Corp., § 553; 141 U. S. 132; 34 N. J. Eq. 383; 1 R. I. 312; 51 N. Y. 27; L. R. 5 Ch. 763; 10 Ch. D. 452.

*J. H. Carmichael,* for appellee.

The preference was illegal. Kirby's Dig., § 951; 67 Ark. 11; 81 Ark. 591. Officers of a corporation issuing false certificates are liable therefor to a *bona fide* purchaser of such certificates. 36 N. Y. 200. Directors are liable for putting property into a corporation for more than its fair value. 118 N. Y. 383; 151 Mass. 547. Directors must use ordinary care in transacting the business of the corporation. 3 Cook on Corp., § 703; 74 Ark. 585; 55 L. R. A. 751. Fraud of the president is the fraud of the company. 68 Ark. 299. A bank is bound by the knowledge of its cashier. 77 Ark. 172.

*Rose, Hemingway, Cantrell & Loughborough* and *John T. Hicks,* for appellant in reply.

An insolvent corporation may prefer its own directors. 59 Ark. 562; 157 U. S. 312.

*J. H. Carmichael,* for appellee in reply.

The officers are liable for the difference between the face value of the stock and what was really paid therefor. 151 Mass. 547; 156 Mass. 137; 138 Mass. 350; 61 N. Y. 237; 80 N. Y. 527.

McCULLOCH, C. J. The Security Fire Insurance Company, a domestic fire insurance corporation domiciled at Little Rock, Arkansas, became insolvent, and a receiver was appointed by the chancery court of Pulaski County to wind up its affairs. The receiver, Charles McKee, instituted the present suit against the directors of the defunct corporation for losses which are

alleged to have resulted from negligence and mismanagement in the discharge of their duties. Counsel for plaintiff summarizes as follows, in his brief, four distinct controversies or points involved, on which he contends the directors should be held liable:

"Proposition 1. The directors should be held liable for watering the stock of the Security Fire Insurance Company.

"Proposition 2. The directors should be held liable for taking over the business of the Security Mutual Insurance Company without proper investigation.

"Proposition 3. They should be held liable for preferring the Citizens Investment & Security Company in the sum of $6,500 after they knew that the Security Fire Insurance Company was insolvent.

"Proposition 4. The directors should be held liable for using the funds of the corporation to purchase worthless notes."

The chancery court on final hearing of the cause rendered a decree against the defendants only on the fourth proposition, the amount decreed being $4,737.68 with interest, the whole aggregating the sum of $5,780.14. Two of the defendants, Robert E. Wait and H. P. Edmonson, appealed from the decree against them. Plaintiff appealed from the failure or refusal of the court to decree liability on the three other propositions.

There is little, if any, conflict in the testimony. The Security Fire Insurance Company was organized in November, 1903; Alex C. Hull being its chief promoter and president. For several years prior thereto a mutual insurance company, known as the Security Mutual Fire Insurance Company, had been engaged in business in Little Rock, and Mr. Hull was its president and manager. It had been doing a large business as a mutual company, and had an extensive system of local and traveling insurance agents throughout the State of Arkansas. Mr. Hull and others interested in the company conceived the idea of organizing a new insurance company on the stock basis as successor to the mutual company, and the Security Fire Insurance Company was organized to carry out that plan. It was understood in the beginning that the last-named company should be organized for that purpose, and that it would take over or purchase the assets of the old company, and assume its liabilities. The work of organizing the new company began in November, 1903, but

it was not complete, and the company was not ready for business until June, 1904.

The statutes of this State provide that "no insurance company shall be allowed to transact business of insurance in this State until it shall have a *bona fide* subscribed capital of not less than one hundred thousand dollars, with a paid-up capital of not less than fifty thousand dollars." Sec. 4335, Kirby's Digest.

The delay in perfecting the organization of this company was in getting the requisite amount of stock subscribed. The necessary amount of stock was finally subscribed, but not paid. Notes were executed for stock subscriptions, but credits of fifty per cent. were indorsed on said notes, leaving only the remaining fifty per cent. payable, so that the stock was in fact subscribed at fifty per cent. of its face or par value. The stock certificates issued were indorsed, "non-assessable and paid-up."

The company did not have $50,000 paid-up capital, as required by the statute in order to do business, and for the purpose of raising that amount it sold the Citizens Investment Company of Little Rock the stock subscription notes given by its subscribers to the amount of $40,000 (after the fifty per cent. had been credited thereon), and thus realized the requisite amount in order to get a certificate from the State Auditor to do business. The notes were sold absolutely, and were indorsed "without recourse" by the insurance company, but Hull and Neimeyer (another of the directors) indorsed them, and Neimeyer pledged his shares of stock in other corporations as security to the Citizens Investment Company for these notes. Hull and Neimeyer were the principal stockholders in and promoters of the insurance company, and indorsed the notes as a matter of accommodation in order to raise funds for the company on its notes so that it could proceed to transact business. The company sold the notes for the obvious purpose of parting with all interest in or liability on them, so that the sum realized would swell its paid-up capital to $50,000. Otherwise the stock for which the notes were executed could not have been certified as paid-up.

On March 25, 1905, the company repurchased from the Citizens Investment Company $7,797.68 of these stock notes;

$4,737.68 of them have never been paid, and are worthless, so far as the makers are concerned.

The new company took over the business and assets of the Security Mutual Fire Insurance Company, and assumed its liabilities. Among the other liabilities assumed was a debt to the Citizens Investment Company of $6,500, for which the old company had executed its note, and on December 5, 1905, it paid this amount with interest to the Citizens Investment Company, thus discharging the note.

The company did business through the years 1904 and 1905, and in November or December, 1905, it was found to be insolvent. The company was probably insolvent long before that time, but on account of concealment of its liabilities by the president the directors did not become aware of its true condition. After this condition was ascertained an effort was made to procure the certificate of the Auditor permitting the further operation of the business for the next year on accommodation notes executed to the company; but the Auditor withheld his approval, and the insolvency proceedings in the chancery court soon followed.

The chancellor declined to render a decree against the directors on the charge of watering the stock, that is to say, issuing paid-up stock with fifty per cent. of the stock notes credited back. The grounds of his refusal, stated in the decree, were that the stockholders were liable for the full unpaid price of the stock, notwithstanding the illegal credit, and that no decree should go against the directors until the remedy against the stockholders is exhausted, and then only to the extent of any loss developed, none being shown in the present case. We think that is the correct view of the matter. The stockholders are liable for the full amount of their several stock subscriptions, notwithstanding the wrongful credits on the notes. 1 Cook on Corporations, § 28. When the remedy against them is exhausted, the question of the directors' liability will then arise as to any loss on account of failure to enforce liability of the stockholders.

The chancellor was also correct in refusing to charge the directors with liability for taking over the assets and business of the Security Mutual Fire Insurance Company and assuming its liabilities. This was the purpose of the organization of the

new company, and in doing this the directors were but carrying out the will of the stockholders. No negligence on their part in this transaction is shown. They used all means reasonably available to ascertain the condition of the mutual company, and acted as reasonably prudent business men. The charge is entirely unfounded, as far as the proof shows, that two of the directors interested in the affairs of the Citizens Investment Company procured the assumption of the liabilities of the mutual company in order to get its debt paid. The debt was already well secured.

It is insisted that the directors should be held liable for the sum of $6,500 paid to the Citizens Investment Company on December 16, 1905. Why should they be held liable? It was a valid and subsisting debt of the Security Fire Insurance Company, and was paid out of available funds of the company. Conceding that the company was insolvent at the time of the payment, that fact does not render the directors responsible. If the payment was an unlawful preference to the Citizens Investment Company as a creditor, the remedy, if any, was against that company to recover the amount so paid. Upon no theory can the directors be held for the amount paid.

The only remaining question is as to the liability of the directors for the amount paid for the stock subscription notes repurchased from the Citizens Investment Company. Aside from the indorsement of Neimeyer, the notes were worthless. They did not constitute bankable paper, and it was not the part of good business judgment to purchase them. It is no excuse for the directors to say that they intrusted the selection of the notes to Hull, as president. They, as directors, were responsible to the corporation, its stockholders and creditors, for the management of its affairs, and they could not shirk the duty by delegating it to another. *Fletcher* v. *Eagle,* 74 Ark. 585; *Bailey* v. *O'Neal,* 92 Ark. 327.

It is insisted that the indorsement of Neimeyer and the pledge of his stock in other corporations made the notes good. Neimeyer's indorsement was made for the accommodation of the Security Fire Insurance Company, and did not inure to the benefit of the latter when it repurchased the notes. The question whether or not the company was bound to protect its accommodation indorser, Neimeyer, or whether the latter, in the

event he paid the notes, could have looked to the company for reimbursement, does not arise. He did not pay the notes, and was not called upon to do so. His pledged stock was not delivered to the company when it repurchased the notes, the same being retained by the Citizens Investment Company as security for debts still unpaid. Neimeyer was no longer responsible on the notes when they passed back into the hands of the company for whose accommodation the indorsement was made. It is well settled by the authorities that where indorsed paper is paid or settled by the accommodated party all liability of the accommodation party is extinguished. 1 Enc. L. & P. 539.

The facts of this case are peculiar in that the accommodated party (which was the Security Fire Insurance Company) indorsed the note without recourse. We can not see, however, that this affects the principles above stated. For, notwithstanding the indorsement without recourse, the accommodated party extinguished the liability of the indorser when payment was made to the holder of the indorsed note. The accommodated party cannot, under those circumstances, purchase the notes and thus keep alive the liability of the indorser. There is an implied liability on the part of the accommodated party to protect the indorser; and the purchase of the notes from the indorsee was equivalent to a payment, so far as the indorser was concerned. 1 Am. & Eng. Enc. Law, 504.

We can conceive of no principle which will permit one who has taken advantage of an indorsement of paper, made for his own benefit, to pay the note in the hands of the indorsee or purchase it and assert liability against the accommodation indorser.

We conclude, therefore, that the decree of the chancellor was correct as a whole, and the same is in all things affirmed.

BATTLE and WOOD, JJ., dissent on the ground that the directors should not be held liable on the repurchase of stock subscription notes. They agree with the majority on the other points.