POLLARD *v*. REISINGER.

Opinion delivered December 24, 1923.

1. CORPORATIONS—SURRENDER OF FRANCHISE.—The attempted surrender of a corporate charter by virtue of a resolution adopted at a special meeting, of which one of the stockholders had no notice and at which he was not present, was void.

2. CORPORATIONS—LIABILITY OF DIRECTORS.—In the absence of fraud, the directors of an insolvent corporation are not personally liable for preferring one creditor over another.

3. CORPORATIONS—LIABILITY OF DIRECTORS—FALSE CERTIFICATE.— Where the owner of land on which a cotton gin and sawmill were located acquiesced in their being treated as her husband's personal property and being turned over by him in payment of his subscription to the capital stock of a corporation, creditors of the corporation cannot hold the directors of such corporation liable as for having falsely certified that such stock was paid up.

4. CORPORATIONS—PAYMENT OF STOCK IN PERSONAL PROPERTY.—Where personal property had a cash value equal to the amount of capital stock of a corporation issued therefor, and was accepted in payment therefor by the stockholders and directors of the corporation, it was in full payment therefor.

Appeal from Crittenden Chancery Court; *Archer Wheatley,* Chancellor; affirmed.

*Gautney & Dudley,* for appellant.

1. The attempted dissolution of the corporation was void, because all of the stockholders were not notified. 152 Ark. 271. Its assets therefore, the corporation being insolvent, became a trust fund in the hands of Reisinger for the benefit of creditors.

2. The directors filed a false certificate, showing that the capital stock was paid, when, in fact, Reisinger failed to pay $4,600 thereof. C. & M. Digest, § 1711, 1730; 92 Ark. 416; 129 Ark. 416; 3 A. S. R. 797; 46 Penn. St., 48; 97 Ark. 522.

3. The uncontradicted evidence shows that the gin and mill were upon the farm owned by Reisinger's wife, and the burden of proof was on him to show that he placed these fixtures upon the realty with the agreement that they could be removed at the end of the lease. 120 Ark. 252; 95 Ark. 268.

*L. P. Berry* and *R. V. Wheeler,* for appellee.

1. The burden was on the appellant to prove the allegations of his complaint, and, as to the allegations of fraud, the burden was on him to prove it by clear and satisfactory evidence. 92 Ark. 509, 122 S. W. 649.

2. The gin and mill belonged to Reisinger. As to the rule governing "fixtures," whether they are a part of the realty or to be treated as personalty and removable, see 56 Ark. 55, 19 S. W. 108; Ewell, Fixtures, p. 22; 95 Ark. 268, 129 S. W. 543; 26 C. J. 703; 74 Miss. 450. There was no proof that the gin and mill were not treated as trade fixtures, removable by the tenant. 95 Ark. 268; 98 Ark. 597.

3. In the absence of fraud, the directors of a corporation are not personally liable for preferring one creditor over another. 95 Ark. 124.

WOOD, J. This action was instituted by the appellant against the F. W. Reisinger Company, a corporation, F. W. Reisinger. J. D. Elliott and W. W. Watson, to

recover the balance due upon a promissory note. Service was had upon the Reisinger Company, Reisinger and Watson, but no service was had upon Elliott. The complaint alleged in substance that the corporation was indebted to the appellant in the sum of $1,500, evidenced by promissory note executed May 11, 1920, and due November 15, 1920, which note was signed by W. W. Watson as surety. It was alleged that the corporation was insolvent; that the stockholders, by resolution, attempted to dissolve the corporation; that such dissolution was void; that the stockholders had appropriated to their own use the assets of the corporation, and without applying to the chancery court for an order distributing the same; that the charter was surrendered for the purpose of hindering, delaying and defrauding the creditors of the corporation; that the capital stock of the corporation, to-wit, $25,000, was divided into one thousand shares of $25 each, of which four hundred shares were subscribed by Reisinger, four hundred by Elliott, and two hundred by Watson; that no part of the capital stock had been paid, and that the stockholders mentioned had sold all of the property of the corporation with intent to cheat, hinder and delay its creditors.

Reisinger alone answered, and in his answer admitted the insolvency of the corporation and that it had surrendered its charter; that the stock was owned in the manner set forth in the complaint, and that the assets had been sold. He denied all the other allegations of the complaint. He pleaded *ultra vires,* and, by way of cross-complaint, alleged that the appellant was indebted to the corporation in the sum of $800, which, he alleged, was paid to him without authority by Watson and Elliott, and was a fraud upon the rights of the cross-complainant and the other creditors of the corporation. He prayed that he have judgment for this sum for himself and all other creditors of the corporation.

The facts of the case which the preponderance of the evidence tended to prove, and the law applicable to those facts, are well stated in what purports to be a

memorandum opinion of the trial court, which counsel for appellee have appended to their brief, and which is as follows:

"F. W. Reisinger, J. D. Elliott and W. W. Watson, in the early part of 1920, organized the F. W. Reisinger Company, a corporation, for the purpose of farming certain lands owned by Mrs. F. W. Reisinger, and of carrying on a general farming operation in connection therewith. The capital stock of $25,000 was all furnished by Mr. Reisinger, who took personal notes of Elliott for $10,000 and of Watson for $5,000 to himself for their shares. The capital consisted of about $18,000 in property and the balance in cash. The company met with reverses during 1920, and that fall, in payment of the $12,500 rent owed Mrs. Reisinger, delivered to her the personal property of the corporation, then valued at $8,900, for which she released her landlord's lien on the cotton crop of greater value, which was turned over to a trustee for distribution *pro rata* among the creditors of the corporation. For some reason, not explained by the evidence, plaintiff did not share in this distribution. In June, 1921, an attempt was made by Mr. Reisinger and Mr. Watson to dissolve the corporation, but Mr. Elliott, who had forty per cent. of the stock, had no notice of this procedure.

"Plaintiff Pollard in May, 1920, sold to the corporation for $2,100 ($600 cash and a note of $1,500) the timber on SW¼ section 5, T. 9 N. R. 7 E. He was later paid $200 more, leaving a balance of $1,300, for which he sued the corporation and the stockholders.

"It is contended for plaintiff that the attempted dissolution of the corporation was void because Elliott was not notified, and this is true. *Quinn* v. *Linden*, 152 Ark. 271.

"Plaintiff also claims that defendant Reisinger wrongfully appropriated the assets of the corporation when he turned over to his wife everything but the crop, and that a creditor can proceed against any stockholder appropriating to his own use the assets of an insolvent

corporation. *Arlington Hotel Co.* v. *Rector,* 124 Ark. 90;
*Jones* v. *Arkansas, etc., Co.,* 38 Ark. 17. This is a correct
statement of the law, but it has no application here,
because Mr. Reisinger is not shown to have received any
of the corporation's property or to have used any of
it to his own advantage. His wife was a *bona fide* credi-
tor of the company. To such extent as she or any other
creditor may have received an unlawful preference,
plaintiff had a remedy as prescribed by §§ 1798 to 1801
of Crawford & Moses' Digest. But, in the absence of
fraud—and none is shown here—the directors of a cor-
poration are not personally liable for preferring one
creditor over another. *Wait* v. *McKee,* 95 Ark. 124-129.

"The next contention is that the defendants are
liable because there was a false certificate of incorpora-
tion filed, in that the $25,000 capital was not paid up, as
alleged. This is based on the theory that the cotton gin
and sawmill were part of Mrs. Reisinger's realty and
could not have been turned over to the corporation by
Mr. Reisinger as part of the assets, and *O'Neill* v. *Eagle
Generator Co.,* 92 Ark. 416, is cited. There is no proof,
however, that these were not treated as trade fixtures
which could be removed by the tenant, as was authorized
by *Field* v. *Morris,* 95 Ark. 268, and *National Bank* v.
*Coal Co.,* 98 Ark. 597; and the fact that Mrs. Reisinger
accepted the gin and sawmill as part payment of her 1920
rent indicates that she was not then claiming these fix-
tures as her own. Plaintiff has failed to establish the
falsity of the certificate in this particular.

"Another ground set forth by plaintiff is that the
notes of Watson and Elliott were surrendered without
consideration, and that, as a creditor, he can compel
their payment to such extent as may be necessary to
cover his debt. *Jones* v. *Dodge,* 97 Ark. 248. The facts,
however, are that they were never indebted to the cor-
poration on these notes, which were given to Mr. Reisin-
ger personally; and, so far as the corporation was con-
cerned, their stock was fully paid for. Such disposition
as was made of these notes between Mr. Reisinger, Mr.

Elliott and Mr. Watson is no concern of the corporation's creditors. It follows that no ground of personal liability against the corporators is shown, and the plaintiff, having failed to take action against the preference given the other creditors within the time prescribed by law, there is no relief that can be given him in this action except a decree against the defunct corporation.''

The undisputed facts show that the capital stock was $25,000. Reisinger testified that this capital stock was paid by him in the sum of $6,621.50 cash and the balance of $18,371.50 in personal property, which he itemized. He stated that he took the notes of Elliott and Watson for their respective shares of stock and paid up the capital stock himself, as above stated. Learned counsel for appellant contend that this was a fraudulent transaction, and they rely upon the case of *Ford Hardwood Lumber Company* v. *Clement,* 97 Ark. 522, to sustain their contention, and quote therefrom as follows: ''Ford was liable for the amount of the judgment against the corporation. The corporation was insolvent. It was not shown that the corporation had any assets, and it owed, besides appellee's claim, more than $3,000. The capital stock was $30,000. Ford had subscribed for $29,600 of this, for which he claimed to have paid by transferring real estate and other property to the corporation. But there is no evidence that any such transfer was ever made. Ford, as president of the corporation, could not accept property for himself in payment of his stock, without express authority to do so from its managing board. The directors had not given him any such authority. Besides, the evidence does not warrant the conclusion that Ford transferred any property to the corporation.''

The case is not authority for appellant's contention here, for the reason, as shown in that part of the opinion quoted, that there was no transfer in that case of any property by the president to the corporation in payment of the stock. In this case, according to the undisputed evidence, the property which Reisinger used to pay up

the capital stock, in addition to the cash payment made by him, was personal property, and same was transferred and possession thereof delivered to the corporation, and this was done by consent of the other stockholders and directors. These stockholders and directors also testified to the value of the personal property, showing that it had a cash value equal to the balance of the subscription to the capital stock.

After carefully reading all of the testimony, as set forth in the record, we are convinced that the findings and judgment of the trial court, as reflected by the memorandum opinion of the chancellor, are in all things correct. The decree is affirmed.