NATIONAL BANK OF WICHITA *v.* SPOT CASH COAL COMPANY.

Opinion delivered February 27, 1911.

1. CORPORATIONS—RIGHT OF FOREIGN CORPORATION TO SUE.—A foreign corporation may sue in this State upon a contract entered into within another State without complying with the statutes imposing conditions upon foreign corporations seeking to do business in this State. (Page 605.)

2. SAME—LIABILITY OF OFFICERS OF FOREIGN CORPORATION.—Where a foreign corporation does business in the State without having com-

plied with the statutory requirements, its officers will not be treated as partners as to business so done in the State. (Page 605.)

3. FIXTURES—LEASE—MACHINERY.—Under the mining law mining machinery and appurtenances placed upon leased property by the lessee are not regarded as fixtures, but may be removed as personal property of the lessee. (Page 606.)

4. SALES OF CHATTELS—VENDOR'S LIEN—PRIORITY.—A mortgagee of a mining lease takes the leasehold estate free from a vendor's lien upon any fixtures attached to the freehold where it had no notice thereof. (Page 606.)

Appeal from Logan Chancery Court, Northern District; *J. V. Bourland,* Chancellor; reversed.

### STATEMENT BY THE COURT.

The appellant, the National Bank of Wichita, a foreign corporation of the State of Kansas, brought suit against the Wichita Coal & Material Company, a corporation organized under the laws of Kansas and doing business at Paris in the State of Arkansas, for the sum of $3,672.09, the balance due on a promissory note for the sum of $5,000, executed to it by said coal company on the 3d day of April, 1908, and to foreclose a mortgage given to secure the payment of said note on the following described property:

"All of improvement and machinery, consisting of engines, boilers, mine rails and pit cars and all mining equipments, including engine house, wash house and tipple house, located on the northeast quarter of the southeast quarter of section 2, township 7 north, range 26 west, in Logan County, Ark."

The mortgage was exhibited with the complaint.

The Wichita Coal & Material Company made no answer.

The Spot Cash Coal Company filed an intervention and cross complaint, and denied that the Wichita Coal & Material Company was a corporation organized under the laws of Kansas and engaged in business in Paris, Ark., and that said company complied with the laws of the State of Arkansas in any manner as foreign corporations were required to do; that it had ever complied with the laws of the State of Arkansas in such manner as to entitle it to do business in the State; and alleged that it was doing business in the State as a partnership, and that E. T. Battin and E. E. Balling are partners, with other partners unknown to the intervener, composing said partnership; denies

that defendant for such reason executed the mortgage sued on, and that it was of any validity; alleged that the Wichita Coal & Material Company did not execute the mortgage and note sued on; that the same were not its act and deed, and that they were executed by E. E. Battin without the lawful consent of said company; and further "that the note and mortgage sued on in this action is not the contract of the defendant, the Wichita Coal & Material Company, and are void and not binding upon them, and are not the property of the plaintiff;" that the plaintiff has no right to sue upon or foreclose the same; that they are the property of E. T. Battin; "that said E. T. Battin executed the said note and mortgage with the fraudulent intent and purpose of covering up the property of the defendant, the Wichita Coal & Material Company, and that the same, if it was a binding obligation, has been fully paid off and settled by money received from the sale of coal and property of the said defendant, and is now being held and foreclosed for the purpose of defeating this intervener in the collection of its debts;" that said defendant, if a corporation, is insolvent and unable to pay its debts; that, as a partnership, defendant, nor either of the partners have any property in the State held in their own name, except the property purchased from this intervener, a greater part of which the defendant has embraced in the mortgage set out in plaintiff's complaint, which intervener alleges was executed for the purpose of defeating them in the collection of their debts.

Intervener further alleged that on the date set out in defendant's interplea in the case at law by the Bank of Paris against the Wichita Coal & Material Company in the Logan Circuit Court, Northern District, and transferred to this court, it contracted to sell the defendant the property herein described, towit: the exclusive right to mine coal from under the northeast quarter of southeast quarter section 2, township 7 north, range 26 west, also all machine fixtures, erection and improvements and all property herein situated, used for the purpose of mining coal for the sum and price of ————, which still remained unpaid. That it was the intention of the intervener, which was well known to the said E. T. Battin, who was then partner of plaintiffs' concern and their so-called president, that the title to said property should be retained until the debt was fully paid, and alleged that the

title was retained for said purpose, and if the title was not retained it was by the mistake of the president, who wrote the contract therefor, and that all the parties to the transaction intended that the title should be retained by the intervener until all such debts were paid; and that said E. T. Battin, the so-called president of plaintiff's concern, was aware of these facts, and is estopped from taking advantage of said mistake.

Further, that said E. T. Battin, at the time of the execution of this mortgage and note sued on by the plaintiff, was the president of plaintiff bank, and knew that the property purchased from intervener had not been paid for to the company, and that they intended to and thought that they had retained the title thereto, and, with the full knowledge of these facts, said Battin took said mortgage as president of said bank. E. T. Battin paid all the indebtedness of the defendant to plaintiff and took this mortgage and note, with the fraudulent intent to defeat the intervener's claim. That said note was also signed by said E. T. Battin, who is the president of plaintiff bank and president of defendant company, and that he is wholly solvent; that he signed said note with the full knowledge of the transaction; that as partner or stockholder in said concern, holding a large majority of stock or interest therein, he received the benefit of the sale by intervener to the defendant and therefore, if the transaction should be held valid, the plaintiff, holder of the note and mortgage, should be required to proceed against said E. T. Battin, one of the payers of same, and leave the said mortgaged property to the said intervener's debt and a vendor's attachment lien, since it had no other security out of which to collect this debt.

It alleged further that the top of the soil of the land described was bought with the defendant's money or the money of said E. T. Battin, and was taken in the name of his wife for the purpose of hindering and delaying the intervener in the collection of his debts; alleged that Battin as president and secretary of the defendant Wichita Coal Company had neglected to make the annual financial statement for said company and was personally liable for its debts because of such failure.

Prior to the filing of this suit, the Bank of Paris filed suit against the Wichita Coal & Material Company, and attached the

property now in controversy. The Spot Cash Coal Company filed interplea in that suit, setting up the same defense as herein. In that interplea they asked personal judgment against E. T. Battin and E. E. Balling, and obtained personal service upon Battin. The Bank of Paris dismissed its complaint, and the cause was continued against Wichita Coal & Material Company and E. T. Battin. E. T. Battin, defendant, filed separate answer, denying he was in partnership with E. E. Balling, and that the partnership purchased or leased interest in the said lands, and that he executed his promissory note to said Spot Cash Coal Company for the purchase money, and that he ever operated a coal mine in this State in partnership with any one; that he was indebted to the Spot Cash Coal Company in any sum whatever.

The Wichita Coal & Material Company filed a separate answer, alleging it was a corporation under the laws of Kansas and had complied with the laws of Arkansas authorizing it to do business in the State; that the Spot Cash Coal Company was interested and dealt with it; admitted purchase of lease and mine property and execution of notes for purchase price, making a contract of sale; denied all allegations of fraud and each and all allegations in the cross complaint.

The cause was transferred to equity and consolidated with the case of National Bank of Wichita, Kas., against the Wichita Coal & Material Company, and both were tried together.

Appellant bank filed answer to the interplea and cross complaint, denying all the allegations thereof.

On October 12, at the instance of appellee, a receiver was appointed to take charge of the property in litigation. The property was ordered sold, and the mine and lease privilege to be valued separately, and the machinery and building to be valued separately. The lease and machinery was sold on March 22, 1910, for $3,200. On February —, 1910, the receiver's expenses were allowed in the sum of $308.03.

The testimony tended to show that E. T. Battin was a director in appellant bank and president of the Wichita Coal & Material Company, a corporation organized under the laws of the State of Kansas. Said company borrowed $5,000 from the National Bank of Wichita, and secured the payment of same by chattel mortgage on its personal property located at Paris, Ark.,

and with its president's personal indorsement. That $1,500 was paid by the Wichita Coal & Material Company on said note, leaving a balance of $4,092.76 due. That said Wichita Coal & Material Company failed, owing about $20,000 and about nine-tenths of its indebtedness had been settled at 20 cents on the dollar, which exhausted the company's assets. The assets consisted of a coal mine lease and coal mining machinery and equipment, which cost the company about $15,000, and sold at the sheriff's sale for $3,200. That the money borrowed from appellant bank went into the general fund of the Wichita Coal & Material Company, and that said company owed the stated balance of $4,096.72 at the time it became insolvent.

The mortgage was introduced in evidence and described the property as it was in the complaint.

M. H. Johns, the president of the Spot Cash Coal Company testified that it was organized for mining· coal on the M. E. McVeagh tract of 40 acres of land near Paris, and that, acting for said company, he sold its mining property to the Wichita Coal & Material Company on the 17th day of September, 1906, and conveyed the same by the following agreement:

"Know all men by these presents that the Spot Cash Coal Company of the county of Logan and State of Arkansas, for and in consideration of the sum of seven thousand five hundred dollars ($7,500), four thousand of which is paid before the sealing and delivery of these presents, the receipt of which is hereby acknowledged, and the balance, three thousand five hundred dollars, secured by notes running one, two, three, four and five years from the date of these presents, with interest at the rate of six per cent. per annum, payable annually, do hereby sell, assign and transfer to the Wichita Coal & Material Company, a corporation organized under the laws of the State of Kansas, and its assigns, to the proper use and benefit, all my right, title and interest in and to a certain indenture of lease, bearing date of November 29, 1904, originally made by Mrs. M. E. McVay, party of the first part, and G. A. Vines, Leon Brown and J. W. Moore, parties of the second part, all of Paris, Ark.; the same lease having been heretofore transferred by these parties to the Spot Cash Coal Company of certain lands and premises therein described, with their appurtenances and certain rights and privi-

leges of mining and taking out coal from the lands therein described. To have and to hold unto the said Wichita Coal & Material Company and its assigns from and after the seventeenth day of September, 1906, for and during the rest, residue and remainder of the terms of ten years mentioned in the said indenture of lease. The said Spot Cash Coal Company hereby agrees to and with the said the Wichita Coal & Material Company that the said assigned premises are now free and clear of and from all former and other gifts, grants, bargains, sales, leases, judgments, executions, back rents, taxes, assessments and incumbrances whatsoever, but hereby reserve the right to a lien on the property to secure the payments of the notes given as a part of the purchase price of the property."

That he sold the entire mining plant, including the mine and all its fixtures, machinery and everything the company owned, which consisted of an unexpired ten-year lease upon the lands owned by Mrs. M. E. McVeagh, giving the right to mine coal, together with the shafts, some entries and some rooms upon the land, mining machinery and other appurtenances used in the operation of the mine. The consideration was $7,500, $4,000 of which was paid in cash, the remainder to be paid in five equal installments of $700 each. The Wichita Coal Company executed five promissory notes for the balance due, drawing 6 per cent. interest each, and the first and second were paid. That no part of the other three had been paid.

G. A. Vines, a stockholder in the appellee company, testified that E. T. Battin came out to the mine where he was at work, and wanted to lease the mine on the McVeagh lands to him and two others, at the time telling him that he had a right to lease it; that he had paid off the mortgage held by the National Bank of Wichita, and that the bank had agreed to collect it for him; that it was his property. "After talking with my attorney, he came back and said he had advised with his attorneys and thought it was not best to do anything more about it. That he had settled all the debts of the Wichita Coal Company at 20 cents on the dollar except Mr. Cherry's, and would have settled that if he had not found out that said company had not complied with the corporation laws of the State of Arkansas; that he, Battin, was indi-

vidually liable, and Cherry knew it. Mr. Brown testified about the same way."

The cashier of the Bank of Paris testified that at the time of the failure of the company he paid off a draft on the coal company for about $1,050 drawn on the American State Bank of Wichita, Kansas, in favor of the Bank of Paris. This draft was protested and never paid. That he went to see said Battin and discussed the matter with him, but could get no information, and had the second interview with Mr. Battin, and was told by him that Battin had bought the McVeagh lease of lands and held it in his wife's name.

It was shown that some of the machinery of the mining outfit was replaced by the Wichita Coal Company, some stationary boilers and other articles being put in; that the improvements were fixed firmly to the earth.

A certified copy of the articles of incorporation of Wichita Coal & Material Company of Kansas, with certificates of appointment of agent and amendments thereto, as filed in the office of Secretary of State of Arkansas, was introduced in evidence.

The court found that the intervener or appellee on September 17, 1906, by written contract, sold and conveyed to the defendant company, the Wichita Coal & Material Company, the 10 year lease on the northeast quarter of the southeast quarter, section 2, township 7, range 26 west, with the coal mine thereon and all appurtenances thereunto belonging, for $7,500; that $4,000 was paid in cash and five promissory notes given for $700 each for the deferred payments, two of which were afterwards taken up. That said deferred payments were recited in the contract of sale, and a vendor's lien was expressly retained for their payment; that the Wichita Coal & Material Company was a corporation organized under the laws of Kansas and doing business in this State, without having complied with the laws of the State authorizing foreign corporations to do business here, and that it was a partnership at the time of the purchase of the lease of the coal mine; that on the 3d day of April, 1908, it executed its promissory note to the appellant for the sum of $5,000 due and payable 120 days after date, and to secure the payment of the same executed a mortgage upon the tipple house, engine house and all the machinery, fixtures and appurtenances belonging to the coal

mine and attached thereto, situated on the land and lease as above described; that $3,672 of which is unpaid; that the vendor's lien of the intervener herein is superior to the mortgage lien of the plaintiff; that there was due the intervener $2,342, and the plaintiff-appellant the sum of $3,933.99 secured by the mortgage; that the property covered by the vendor's lien and mortgage was sold by the commissioner of the court for the sum of $3,200. That E. T. Battin was a stock owner and partner in the Wichita Coal & Material Company. The court decreed that the appellee have judgment against the Wichita Coal & Material Company for its debt $2,342 and interest, and a vendor's lien on all the property in litigation to be satisfied as a first lien out of said funds in the hands of the Commissioner; that the National Bank of Wichita have judgment against the Wichita Coal & Material Company for its debt for the balance due; that its mortgage lien was subsequent to the vendor's lien upon the fund in the hands of the commissioner, and ordered the commissioner to pay the costs of the suit and apply the proceeds of the sale of the property to the debt and judgment of the intervener, and the overplus, if any, to the appellant as satisfaction of their judgment, and gave judgment in favor of the Spot Cash Coal Company against E. T. Battin, jointly as a partner of the Wichita Coal & Material Company for the amount of its debt against the said company.

From this judgment this appeal is brought by appellant.

*Appellant, pro se.*

*Robert J. White,* for appellee.

KIRBY, J., (after stating the facts). It was not important in this case to show that the Wichita Coal & Material Company had complied with the laws of the State of Arkansas authorizing foreign corporations to do business here, although the proof was probably sufficient to show that it had, for the reason that the mortgage and note sued on were executed to said bank in the State of Kansas, the domicil of both corporations, where the money was borrowed; nor would the doing of business in this State by a foreign corporation that had not complied with our laws, prescribing conditions upon which such corporations may do business here, have the effect to dissolve such corporation and

render said corporation in effect a partnership and its officers partners as to such business done within the State, as was held by the lower court.

The lease from Mrs. McVeagh of the right to mine coal upon the 40 acres of land does not show that any mining machinery was established upon said tract; nor was there anything in the instrument conveying or assigning said lease to the Wichita Coal & Material Company upon the sale of the mining machinery and lease to it that would indicate that the machinery was included in the terms of the lease and subject to the vendor's lien retained therein, except it be the word, "appurtenances." Under the mining law, mining machinery, apparatus and appurtenances placed upon the property by the lessee are not regarded as fixtures that pass with the soil and lease as appurtenances, but as personal property of the lessee that may be removed by him, in the absence of an express stipulation in the lease to the contrary. 2 Snyder on Mines, § 1320; White on Lines & Mining Remedies, § 135.

The Wichita Coal & Material Company, having bought the lease and mining equipment, mortgaged the latter, as it had the right to do, after having replaced a great deal of same with new machinery, to secure the money borrowed from appellant bank, which mortgage was duly recorded and constituted a lien from the date of the filing for record thereof. There was no mention or description of any of this mining machinery or equipment in the assignment of the lease to the Wichita Coal & Material Company that would have put a person on notice that it was included within the terms of it, nor was such assignment of lease reserving a vendor's lien, if it be held that it was more than an agreement to, and did, reserve a lien, recorded, nor did appellant bank have any notice whatever of any claim of or lien for purchase money of appellee upon said machinery when and upon which it took the mortgage and advanced the money. The bank's lien, acquired by the mortgage, duly filed and recorded, was therefore superior to the vendor's lien of appellee for the balance of the purchase money upon the property included in the mortgage.

It follows that the court erred in declaring the vendor's lien superior to the mortgage lien of the bank and adjudging that the proceeds of the sale of the lease and machinery be first applied to the satisfaction thereof and afterwards to appellant's

judgment against the Wichita Coal & Material Company. Also in adjudging said company and E. T. Battin a partnership and rendering a judgment against said E. T. Battin for the amount of the purchase money still due appellee company upon the lease sold by it to said Wichita Coal & Material Company. The proceeds of the sale of the mining machinery and equipment described in the mortgage must be first applied to the payment of the judgment of appellant upon its debt secured thereby, and the overplus, if any, to the satisfaction of appellee's debt.

For the errors indicated the judgment is reversed, and the case remanded, with directions to enter a decree in accordance with this opinion.