## SALMON v. BOYER.

Opinion delivered June 16, 1919.

1. TRIAL — INSTRUCTION — ASSUMPTION OF FACT.—An instruction which assumed the ownership of land to be undisputed when it was in dispute was erroneous.

2. SAME—INSTRUCTION—ASSUMPTION OF FACT.—An instruction was erroneous which assumed that the title to certain machinery permanently affixed to the soil was in the plaintiff or lessee of the soil under a contract which reserved the right to move such machinery where there was evidence tending to prove that this right had been abandoned by such lessee.

3. EVIDENCE—CONCLUSIVENESS.—Facts claimed to be established by the testimony of an interested witness cannot be said to be established by undisputed testimony.

4. FIXTURES—INTENTION OF PARTIES.—Whether a chattel attached to realty becomes a fixture or retains its character of a chattel depends upon the intention of the parties; to establish which it is admissible to show its adaptation to the use or purpose of that part of the realty with which it is connected and the intention of the party making the annexation.

Appeal from St. Francis Circuit Court; *J. M. Jackson,* Judge; reversed.

*R. J. Williams,* for appellant.

The verdict is contrary to the law and the evidence, and the court erred in its instructions to the jury. Taylor, Landl. & Ten. (9 ed.), § 551, 553; 98 Ark. 606; 93 *Id.* 78. The court also erred in refusing to give No. 1 asked by appellant and in allowing the pretended lease to be read in evidence, and the verdict is excessive.

*C. W. Norton,* for appellee.

The legal status of personal property attached to real estate to be used in connection therewith is determined by the purpose and intent of the parties at the time of putting the articles in position. Agreements that the lessee shall have the right of removal from the freehold have been taken as conclusive that the same are not intended as fixtures. 105 Ark. 638; 86 *Id.* 503. There is no error in the instructions, and the verdict is supported by the evidence. If there was any error in the

instructions it was waived by appellant's failure to make it part of the motion for a new trial. 117 Ark. 198; 174 S. W. 241-244; 87 *Id.* 640; 90 Ark. 484.

HUMPHREYS, J. Appellee instituted suit against appellant in the St. Francis Circuit Court to recover $4,174, alleging that appellant had unlawfully converted certain property of that value belonging to appellee.

Appellant filed answer, denying that the property described in the complaint belonged to appellee; that he wrongfully took possession thereof; or that it was of the value alleged.

The cause was submitted to a jury on the pleadings, evidence and instructions of the court, upon which a verdict was returned and judgment rendered against appellant for $800. From the judgment an appeal has been duly prosecuted to this court.

The substance of the evidence is as follows: On the 24th day of January, 1910, the Heth Cooperage Company, a partnership consisting of J. W. Boyer, S. I. Thompson and M. E. Williams, leased a tract of land in Heth, Arkansas, from the Heth Improvement Company, for the purpose of establishing a cooperage and lumber factory. The lease was for 15 years, signed "Heth Improvement Company, by C. C. Bird, Secretary," on the one part, and "Heth Cooperage Company, by S. I. Thompson, J. W. Boyer and M. E. Williams," on the other part, and contained a provision that the Heth Cooperage Company might remove all buildings and machinery placed thereon at any time on or before the expiration thereof. Appellee testified that the Heth Improvement Company was Bird and Morrison; that they executed the lease to them, and, according to his understanding at the time, were the owners of the land. The lease was introduced in evidence over the objection and exception of appellant. In the year 1910, C. A. Shue constructed a heading plant on the land for the Heth Cooperage Company and placed therein an engine, boiler and all necessary machinery and connections, and a dry kiln

about 100 feet from the main shed. The engine was set on a concrete foundation about four feet in the earth, and was securely bolted thereto with bolts six feet long. The boiler was encased in a brick wall resting on a concrete foundation about 13 inches below the surface. The Heth Cooperage Company operated the heading plant until January 1, 1913. S. I. Thompson, in charge of operation, died, and the mill was not thereafter operated. It remained there intact until the spring of 1915, when it burned. During the period of operation, J. W. Boyer visited the plant about once a year. After it ceased operation, he visited the town of Heth in January, 1917, and inspected the property. He returned again in January, 1918, at which time he ascertained that the property had been sold, and appropriated by appellant. Appellee was the surviving partner and entitled to the assets of the Heth Cooperage Company. Appellant purchased the real estate in 1916, from Abston, Wynne and Jackson. Appellant testified that at the time of his purchase he inquired of his grantors concerning the engine, boiler and other heading machinery which had remained in place after the fire, and was told by them that it was a part of the real estate; that he bought the machinery along with the land without notice of appellee's claim to the machinery. The following stipulation appears in the record: ''By agreement of counsel, it was admitted that the defendant, Salmon, purchased the land from Abston, Wynne and Jackson; and Abston, Wynne and Jackson purchased it from .............. Hairgrove, and ..............  Hairgrove from the Heth Plantation Company, and that Salmon was the owner of the land.'' Appellant sold a part of the machinery, and converted the other part to his own use. Some of the witnesses valued it at more than the amount recovered, and others at less.

The cause was sent to the jury upon the assumption that the undisputed evidence showed that appellee was the owner of the engine, boiler and other machinery of the heading plant sold and converted by appellant. The court instructed the jury that the sole issue to be deter-

mined by them was the market value of the property at the time it was converted by appellant. This was error because, if it be conceded that the execution of the lease, which was not acknowledged and recorded, was proved and admissible as evidence, still the undisputed evidence does not show that the lessor, Heth Improvement Company, was the owner of the land at the time the lease was executed, or thereafter. Appellee testified that he understood the Heth Improvement Company was the owner. This, together with the construction of the plant and the occupancy under the lease for several years, was the only evidence tending to show ownership of the land in the Heth Improvement Company. It was agreed that the appellant was the owner of the land through *mesne* conveyances from the Heth Plantation Company, a corporation. This agreement tends to prove that the Heth Improvement Company was never the owner of the land. The ownership of the land on the date of the lease was a disputed question of fact for the determination of the jury, under the pleadings and evidence.

It was also error to instruct the jury that the undisputed evidence showed that appellee was the owner of the engine, boiler and other machinery, because, even if it be conceded that the Heth Improvement Company was the owner of the land at the time the lease was made, and that the appellee, as the surviving partner of Heth Cooperage Company, had the right, under the lease, to remove all machinery attached to the soil, on or before the expiration of the lease, there was evidence in the record tending to show the abandonment of the reserved right. A part of the consideration of the lease was the operation of the plant. Appellee ceased to operate the plant on the first day of January, 1913, after the death of his partner. The plant was destroyed by fire in the spring of 1915, and the engine, boiler and other machinery left in an exposed condition on the ground, without anyone in charge thereof. Appellee inspected the fixtures in January, 1917, to ascertain whether they were all there. In this state of case, it was a question

of disputed fact whether or not appellee had terminated the lease and his right to remove the fixtures, as surviving partner, by abandonment.

It is also exceedingly doubtful whether the execution of the lease was sufficiently proved to admit it as evidence. If the Heth Improvement Company was a partnership, the lease being signed by one member of the firm, even though signed as secretary, would be sufficient proof of the execution of the instrument to admit it as evidence. The signature on its face, however, would indicate that the Heth Improvement Company was a corporation. If so, it was necessary to show that Bird, as secretary, had authority from the corporation to execute the lease.

It is also insisted by appellant that the court erred in refusing to instruct the jury, in effect, that, if they found the engine and boiler were securely fastened into the soil and that appellant had purchased the land for a valuable consideration, without notice of appellee's claim under his lease, they should return a verdict for appellant. This instruction excludes the idea that it was the duty of appellant, in order to bring himself within the doctrine of innocent purchaser, to make inquiry concerning the ownership of fixtures of this character, even though substantially fastened into the soil. It is true appellant testified that he inquired from his vendor concerning the ownership of the fixtures and was informed that they were a part of the real estate. He was an interested party, and facts established by his testimony alone cannot be said to be established by the undisputed evidence. *Skillern* v. *Baker,* 82 Ark. 86; *Briggs* v. *Collins,* 113 Ark. 190.

The instruction also makes the sole test of whether fixtures of this character retain their nature as chattels or become irremovable fixtures depend on the manner in which they are affixed to the soil. This court has laid down other tests, to-wit: "Appropriation or adaptation to the use or purpose of that part of the realty with which it (the fixtures) is connected."

"The intention of the party making the annexation to make the article a permanent accession to the freehold." *Choate* v. *Kimball,* 56 Ark. 55; *Bemis* v. *First National Bank,* 63 Ark. 625; *Ozark* v. *Adams,* 73 Ark. 227.

According to Ewell on Fixtures, the tendency of the times is to attach the most importance to the test of intention, the first two tests being in the nature of evidence by which the intention may be ascertained. For the reasons suggested, the court properly excluded the requested instruction.

As the case must be reversed for the errors indicated, it is unnecessary to discuss the insistence of appellant that the verdict was not supported by any substantial evidence.

The judgment is reversed, and the cause remanded for a new trial.