THOMAS COX & SONS MACHINERY COMPANY *v.* BLUE TRAP ROCK COMPANY.

Opinion delivered May 28, 1923.

FIXTURE—MACHINERY ATTACHED TO LEASEHOLD—RESERVATION OF TITLE.
—If a landlord knew, when machinery was attached to its land by its lessee, that the vendor of the machinery had reserved title until the purchase money was paid, the machinery did not become a fixture and was removable; but if the landlord was ignorant of such reservation, and the machinery was of a character that, when attached, it would become a fixture and could not be removed without injury to the freehold, the vendor was not entitled to remove it.

Appeal from Pulaski Circuit Court, Second Division; *W. B. Brooks,* Judge; reversed.

*Coleman, Robinson & House,* for appellant.

The court erred in declaring as a matter of law that the articles of machinery sued for were fixtures and in directing a verdict for appellees. 124 Ark. 341; 26 C. J. 689, § 60; 7 A. L. R. 1573. The judgment should be reversed, and judgment entered here for appellant for the property or its value.

No brief for appellees.

Wood, J. This is an action in replevin by Thos. Cox & Sons Machinery Co. (hereafter called the appellant) against G. R. Fulton to replevy certain machinery sold by the appellant to Fulton. The appellant alleged that it owned the machinery, which it described in its complaint, and was entitled to possession thereof; that Fulton wrongfully detained the property from the appellant. It prayed judgment for the return of the property or its value in the sum of $529, and for wrongful detention thereof in the sum of $453. After service of the writ it was discovered that the property was in the possession of the Blue Trap Rock Company (hereafter called company). Appellant then amended its complaint, making the company a party defendant. The company executed a bond for the detention of the property, and answered denying that it was in the possession of the property without right, and denying that it unlawfully detained same. It further alleged that on April 1, 1919, by written agreement, it leased to Fulton its rock quarry plant; that Fulton agreed to operate the plant at his own expense and make such necessary repairs as might be needed, and that it was provided that he should not bind the lessor on any obligation whatever; that the appellant had notice of the conditions of the lease; that in September, 1919, Fulton purchased the machinery and supplies for making the repairs from the appellant, and the company notified the appellant of the conditions under which Fulton was operating the plant; that the company

indorsed certain notes of Fulton to the appellant, in which the appellant retained title to certain machinery that had been installed in the plant of the company, and, at the time of indorsing these notes, warned the appellant that Fulton was obligated to make the repairs to the plant and not authorized to bind the company. The company further alleged that the lease of its plant to Fulton had expired and been surrendered to the lessor several months before the appellant instituted this action. The company also alleged that the property in controversy had been permanently attached to the realty.

The secretary and treasurer of the appellant testified that he sold the property in controversy to Fulton. He demanded $1,000 in cash of Fulton, and required also that he have the notes for the balance of the purchase money indorsed by the company. Witness talked the matter over with Ledwidge of the company, and the company agreed to indorse the notes, and did indorse for the first part of the machinery ordered. When the balance of the order arrived, appellant took two notes of $210 each. The notes recited that they were given for certain machinery, which is described therein. The notes contained a recital that the sale was on the express condition that the title and right of possession did not pass from the appellant until the balance of the purchase money was paid in full. The property was sold and delivered to Fulton upon an understanding with him and Ledwidge that the company should indorse the notes. The notes for $210 each are still due. The machinery which was purchased by Fulton consisted of pulleys, bearings for a shaft, and a conveyor belt running over two pulleys. The machinery sold Fulton could be taken out without damaging the machinery that was there before it was put in. The present value of the machinery is, as second-hand machinery, about $500. The fair estimate of the damage to the machinery since it had been put into the plant was $453. In September, 1919, the appellant refused to deliver the other machinery that

had been ordered until the company indorsed the notes. All the machinery was bought about the same time, but at the time it was purchased it was impossible to have all of the articles delivered at once. That accounts for the fact that the two notes sued on were taken after the other notes. The first notes which were taken when the machinery was purchased (and which are indorsed by the company) were paid. The notes in suit dated Jan. 1, 1920, were presented to the company for its indorsement immediately thereafter. Witness took the notes to the company for indorsement, which the company refused.

Fulton testified that he executed the notes in controversy, got the machinery described therein, and installed it at the plant of the company. He had not paid the notes. The machinery purchased is a belt conveyor to handle rock. It is absolutely separate from the rest of the plant, and would work if the rest of the plant were gone. It could be taken out and not affect the rest of the plant. Before installing this belt conveyor he removed an elevator which was in the plant. The company knew that witness was buying these supplies, and talked it over with him before the purchase, and gave witness $1,000 to make the first payment. The items which composed the belt conveyor are fastened together, and the frame is bolted to the plant. It could be removed without damaging the rest of the plant.

The president of the appellant testified corroborating substantially the testimony of the secretary and treasurer. He stated that the whole thing was practically one transaction, but the execution of the notes in suit was delayed because the machinery was not all delivered at once, but in relays. The machinery was not a part of the machinery of the plant.

Ledwidge testified, for the company, that the company's lease to Fulton expired in April, 1920. After Fulton had leased the plant he wanted to install a belt conveyor, and the company let him have $1,000 upon his representation that he could finance the rest of the pur-

chase. After the machinery had come, Williams, the secretary and treasurer of appellant, stated to witness that he had promised to indorse Fulton's note. Witness didn't think he had made Williams that promise. He had no authority to make such a promise, but the machinery had come, and Fulton could not get it unless the notes were indorsed, and so witness indorsed the notes. Witness told Cox at the time he indorsed these notes that if he sold Fulton any more machinery witness hoped Fulton would beat him out of it. That was the last witness heard of the matter until several months afterward, when Williams advised witness that he had taken two other notes for $210 each from Fulton, and asked that the company indorse them. The notes in suit were dated January 1, 1920, but witness had never heard of that up to the time of his renewal of one of the original notes on January 19, 1920. It was witness' understanding with Fulton that the whole transaction was completed at the time the company indorsed the first notes. Witness thought that Fulton had a separate running account with the company, and that the new notes represented the balance due on that account.

Cammack, who is also an officer of the company, testified that there was some confusion about notes, but after going into the matter the company agreed that it would indorse the first notes given in purchase of the machinery. Later witness heard Ledwidge tell Cox that if he sold Fulton anything more he did so at his peril. That was at the time the original notes were signed. Witness understood that that was a complete transaction. Witness never heard of the notes in suit. Witness didn't think that the machinery could be removed without dismantling the plant. The company had always had a conveyor, and could not operate without it.

The appellant prayed the court to instruct the jury to the effect that whether the articles in controversy are fixtures is a question to be determined by the intention of the parties in placing them in the plant; that, if

the intention of the parties was that appellant should recover the articles upon Fulton's failure to pay for the same, then such articles were not fixtures; that, if the jury found that the articles had become fixtures, but that the company agreed to pay for them, the appellant would be entitled to a verdict against the company for the return of the articles, or their value, and for damages. The court refused to so instruct the jury. On its own motion the court instructed the jury to the effect that the articles in controversy had become fixtures by attachment to the realty, and that the appellant could not recover the property from the company, and directed the jury to return a verdict in favor of the company. The court further directed the jury to return a verdict in favor of the appellant against Fulton for the return of the articles or for the value of the property, $420, with interest from January 1, 1920, at the rate of 10 per cent. per annum, or $520.70.

The jury returned a verdict as directed. Judgment was entered in favor of the company against the appellant, from which is this appeal.

The trial court erred in declaring, as a matter of law, that the articles sued for were fixtures. Under the evidence this was an issue for the jury. The jury might have found from the testimony that the company knew when the machinery for which the notes in controversy were executed was purchased by Fulton and installed by him on land leased to him by the company, that the company had knowledge of the fact that the machinery would be installed on its land, and that it also had knowledge of the fact that the appellant had retained title thereto until the purchase money was paid. If the company had this knowledge, then it would be estopped from asserting that the appellant had no right to remove the property from its land; and if it had such knowledge, it could not set up in defense to appellant's action that the articles in controversy were fixtures to which the company had acquired title by virtue of its ownership

of the soil. See *Fears* v. *Watson*, 124 Ark. 342, and cases there cited.

On the other hand, if appellant sold Fulton machinery and reserved the title thereto, which machinery appellant knew at the time Fulton intended to attach to the realty of the company, and if the appellant knew at the time that the machinery was of a character that, when attached, would become a fixture and could not be removed without injury to the freehold, and if the company was ignorant of the fact that appellant had reserved the title to the machinery for which the notes in controversy were executed, then the appellant would not be entitled to recover. *Peck & Hammond* v. *Walnut Ridge Dist.*, 93 Ark. 77.

The issues under the evidence were not properly submitted to the jury, and for this error the judgment is reversed, and the cause is remanded for a new trial.