HACHMEISTER *v.* POWER MANUFACTURING COMPANY.

Opinion delivered October 6, 1924.

1. MORTGAGES—AFTER-ACQUIRED PROPERTY.—A mortgage which undertook to convey "machinery now or hereafter put upon said premises for the conduct hereof, whether attached or detached," necessarily referred to machinery which the mortgagors had or might thereafter have title, and therefore had the right to include in the mortgage.

2. SALES—RESERVATION OF TITLE.—When a chattel is sold with a reservation of title in the vendor until the price is paid, the title remains in him until the condition is performed, and a purchaser from the vendee acquires no title though he buys in good faith for a valuable consideration.

3. SALES—RESERVATION OF TITLE.—Where the title to machinery was reserved in the seller until the purchase price was paid, the vendee could not divest the vendor's title before paying for the machinery by affixing it to real estate which he had previously mortgaged to another.

4. SALES—CONDITIONAL SALE.—WAIVER.—Where a seller, at the time it sold machinery with reservation of title, knew that it was to be used to repair machinery permanently attached to land which was subject to a mortgage, and that it could not be detached without destroying the use of such machinery, the seller will be held to have consented to such use, and the mortgagee's lien thereon will be held to be superior to the seller's reservation.

Appeal from Cleveland Circuit Court; *Turner Butler,* Judge; affirmed.

*Trimble & Trimble,* for appellant.

*C. W. Norton,* for appellee.

WOOD, J.  B. F. Thompson, Sarah T. Walton and M. R. Crandall owned a tract of rice land in Arkansas County.  Prior to March 1, 1922, they executed a deed of trust to Herman Hachmeister, trustee for Charles Forman, named as beneficiary in the deed of trust.  This deed of trust was to secure the sum of $148,000.  On March 1, 1922, Thompson, Sarah Walton and Crandall executed to Hachmeister, trustee for Charles Forman, beneficiary, two additional deeds of trust on the same lands, securing fourteen and nineteen thousand dollars, respectively.  These additional deeds of trust were duly recorded on April 19, 1922.  One of the deeds of trust,

after describing the real estate, contains the following language: "together with the tenements, hereditaments, etc.," and "machinery now or hereafter put upon said premises for the conduct hereof, whether attached or detached."

After the additional deeds of trust were executed and recorded, Thompson, Walton and Crandall formed a corporation designated as Walton-Arkansas Rice Company (hereafter called rice company), and deeded the lands to that company, subject to the deeds of trust above mentioned.    On May 22, 1922, and at subsequent dates, the Power Manufacturing Company (hereafter called Power company) sold to the rice company new stationary engines, and two crank shafts, a governor, and a spider clutch for engines already on the land.    All this machinery was necessary to the irrigation of the rice land.    The contract of sale between the Power company and the rice company contained this provision: "The title to the machinery or material furnished under this agreement is to be and remain in the Power Manufacturing Company, and does not pass to the purchaser until full purchase price hereunder (including any modifications or extensions of payments, whether evidenced by notes or otherwise) shall have been fully paid in cash, and the purchaser is to do all acts necessary to perfect and maintain such retention of title in the company."    The contract contained the further provisions that, in case of failure to pay the purchase money or any note given therefor, the Power company might collect same by action or repossess itself of the property.    And further: "It is understood that the machinery hereunder shall retain its personal character and shall not become a fixture by being placed in any building or in any manner whatsoever annexed to any land."    And further: "If said machinery is placed upon mortgaged or incumbered premises, it shall be without prejudice to the company's retention of title thereto as herein provided.    It is understood and agreed that, under the foregoing conditions

and stipulations, the aforesaid engine is to be located and placed upon the following described lands," etc.

Neither the mortgage notes nor the notes given for the purchase of the machinery were paid by the incorporators of the rice company individually, or the company itself. The trustee and the beneficiary in the deeds of trust instituted this action to foreclose the second and third deeds of trust, and asked that the first deeds of trust be adjudged a lien against the land and the improvements. They alleged that the engines and parts were fixtures and were covered by the deeds of trust, and they prayed that the first deed of trust be adjudged a first lien against the land and improvements.

The Power company, in its answer, denied that the deeds of trust created a lien on the engine and parts, and prayed that its right and title retained in the purchase money notes be declared superior to the rights and liens of the beneficiary in the deeds of trust. The parties agreed that the engines and parts were affixed to the soil in a manner approximately as follows: "That is, a pit is excavated about 8' x 20' in size and 6 or 7 feet deep (that the hardpan in the soil is at a depth of three or four feet), which excavation is filled with concrete to ground level, and imbedded in this block are iron bolts, which extend above the surface of the block for about two feet. Around these bolts a second concrete block is built, and the engine is bolted thereto and held in place on the same by iron washers and nuts or taps, the bolts coming up through the concrete and through holes prepared in the base of the engines. The second concrete block is approximately the same in size as the base of the engine. After the engine is bolted down, fresh concrete grouting is poured about the base of the engine, and in some cases may come up to the top edge of the base, but does not cover it, nor does it cover the heads of the bolts and taps."

It was further agreed "that the mechanics and other employees of the Power Manufacturing Company would testify, if called, that engines so affixed to the soil are easily and readily removable by unscrewing the taps, and

lifting the engine off the base, and that it is a common occurrence for engines to be so removed. That the same witnesses would testify further that such removal of an engine causes no damage, it being usual for such engine houses to be provided with doors large enough to admit an engine. That the foundation, however, would remain on the land, and would, of course, prevent the use of the soil for agricultural purposes, but the same engine base would be usable for another like engine, and that in locating engines on rice land it is customary to choose the site of the same with regard to serving the land with water.''

It was further agreed that neither the trustee nor the beneficiary in the deeds of trust had any knowledge of the purchase of the engines or parts and the placing of the same on mortgaged premises by the mortgagors. The trustee and the beneficiary in the deeds of trust knew nothing about the purchase money contracts in which there were deferred payments and notes given in which the vendors retained title until the purchase money was paid. It was further stipulated that Arkansas County is a large and leading rice-growing county, its principal crop being rice, for the growth of which steam oil engines are installed on the lands, and that there are five or six steam or oil plants on the land in controversy, part of them having been erected thereon several years prior to the erection of the plants sued on herein; that the assessor's records show no pumping plants assessed as personalty in Arkansas County, but the taxes are extended on the lands covering all improvements thereon as realty, and a total tax assessed against the lands and improvements as realty.

In addition to the above, there was testimony adduced for the Power company tending to show that Primm oil engines and the repair parts, such as are in this controversy, could be removed, after being affixed to the soil, without damage or destruction to the house in which they were situated, or without damage to the real estate, and that the parts could be removed from the engines

without damage to the remaining machinery.   But there was testimony on behalf of the plaintiffs tending to prove to the contrary.   There was testimony to the effect that it was not customary for an oil engine to be removed after it was once installed, and it was not practical to move the same from place to place; that, if such were done, it would result in damage to the realty; that, upon the removal of an engine, the foundation upon which it rested and the building housing it would be useless and that the removal of engines would cause the land to depreciate in value.

It would unduly extend this opinion, and we deem it unnecessary, to set out and discuss this testimony.   The chancery court found from the testimony that the engine and parts were fixtures, in the absence of an agreement to the contrary; that the engines in controversy were purchased from the Power company, which retained title thereto, and were installed on the lands some time after the execution of the mortgage sued on; that the mortgagor made his loan in the absence of these engines; they were not considered as part of the security; that very slight damage would result by reason of their removal from the premises; that the crank shaft, the governor and the spider clutch were repairs or parts installed on engines at the time the loan was made, and when these parts were attached to the engines they became a part of them.   The court entered a decree based upon these findings in favor of the Power company, giving it a superior right to the engines in controversy, and in favor of the plaintiffs, giving them the superior right to the engine parts mentioned.   The plaintiffs appealed from the decree in favor of the Power company as to the engines, and the Power company cross-appealed here from the decree in favor of the plaintiffs as to the engine parts.

1.   We will dispose first of the appeal.   It was wholly beyond the power of the makers of the deeds of trust or the mortgagors to pass title to, or to place a mortgage lien upon, chattels which they did not own at

the time the deeds of trust were executed and the title to which they did not have at the time these chattels were attached to the freehold embraced in the mortgages.   By the clause in the deeds of trust which specifies ''machinery now or hereafter put upon said premises for the conduct hereof, whether attached or detached,'' the parties could not have contemplated machinery to which the mortgagors had no title at the time the deeds of trust were executed and to which they would have no title when the machinery was attached to the land embraced in the mortgages.   The above clause of the mortgage necessarily refers to machinery on the land to which the makers or mortgagors had title and therefore the right to include in the deeds of trust.

. In *McIntosh & Beam* v. *Hill*, 47 Ark. 363, we held (quoting syllabus) : ''When a chattel is sold with a reservation of title in the vendor until the price is paid, the title remains in him until the condition is performed, and a purchaser from the vendee acquires no title, though he buys in good faith for a valuable consideration and without notice of the condition.''   See also *Triplett* v. *Mansur-Tibbetts Co.*, 68 Ark. 230; *Cullin-McCurdy Const. Co.* v. *Vulcan Iron Works*, 93 Ark. 342; *Starnes* v. *Boyd*, 101 Ark. 469, 473; *Clinton* v. *Ross*, 108 Ark. 446; *Garner Mfg. Co.* v. *Cornelius Lbr. Co., ante,* p. 119.

The appellants contend that the appellee has the same rights, and no more, as the rice company would have had, had it paid for the machinery in full and had set up its title against the lien of the mortgagees.   To support this contention, they cite the case of *Thomas Cox & Sons Machinery Co.* v. *Blue Trap Rock Co.*, 159 Ark. 209.   In that case the Trap Rock Company leased its quarry to one Fulton, and, as a part of his contract, Fulton agreed to operate the plant and make necessary repairs at his own expense.   Fulton bought certain machinery from Cox & Sons Machinery Company.   The lessor company notified the vendor company of the conditions under which Fulton was operating the plant, and indorsed the notes of Fulton, in which the vendor company retained

title, and at the same time warned the vendor company that Fulton was obligated to make the repairs and not authorized to bind the lessor company. In that case we held that, if the vendor sold to the lessee machinery and reserved title thereto, which machinery the vendor knew at the time that the lessee intended to attach to the realty of the lessor, and knew at the time that the machinery was of a character that, when attached, would become a fixture, and could not be removed without injury to the freehold, and if the lessor was ignorant of the fact that the vendor had reserved title to the machinery, then the vendor would not be entitled to recover as against the lessor, the owner of the freehold. That case is wholly distinguished on the facts from the facts of this record, and has no application whatever. The holding in that case against the conditional vendor in favor of the lessor, the owner of the freehold, was predicated solely upon the fact that the vendor had been actually notified and warned by the owner of the freehold that the vendee, the lessee, had made a contract to repair the premises and that the machinery purchased was for that purpose.

In the case at bar there is no proof that the conditional vendor of the machinery knew that the conditional vendee had entered into a contract with the owner of the freehold to buy machinery for the purpose of making repairs, and that the conditional vendor had expressly acquiesced in, and consented to, such contract. Nor was there any testimony tending to prove that the conditional vendor knew that, under the contract, the machinery purchased would be attached to the freehold in such manner as to become a fixture. We conclude therefore that the mortgagors or the makers of the deeds of trust had no power to vest title or lien in the trustees or beneficiary in the deeds of trust in the engines in controversy for which the vendees at that time had not paid, nor could the vendees, by affixing these engines to the freehold before they had paid the purchase money and acquired title thereto, vest title in the owners of the freehold and deprive the conditional vendor, the Power company, of

its title and right to such machinery. *Fears* v. *Watson,* 124 Ark. 341.

2. On the cross-appeal, it appears that there were two one-hundred-horse power crank shafts with counter-weights for engine No. 885 and engine No. 886; also one governor and clutch spider for engine No. 885, and a governor for engine No. 886. The total value of these articles was $2,030. The court found that these parts were attached to engines Nos. 885 and 886, which were on the lands at the time the loans were made, and that, when they were so attached, they became a part of the engines. There was testimony to warrant a finding that these engines, which were on the land at the time the loan was made, were fixtures, and that therefore the mortgagors had title thereto and that they were included in the deeds of trust. These parts, the Power company knew at the time, were to be used to repair the engines which were fixtures, and, when so attached, would become parts of those fixtures, and therefore a part of the freehold, and that the parts could not be detached from the engines without destroying the use of the engines and injury to the freehold. The Power company therefore, as to these parts, is in the attitude of having consented in advance that the parts should become fixtures and that the owners of the freehold and the beneficiaries under the mortgages or deeds of trust would have the superior right or title to these parts. *Thos. Cox & Sons Mach. Co.* v. *Blue Trap Rock Co., supra.* Besides, so far as the parts are concerned, the Power company is precisely in the same attitude as if these parts had been attached to the engines at the time the deeds of trust under which the appellants claim were executed.

The decree of the court is therefore in all things correct, and it is affirmed.