CONTINENTAL GIN COMPANY *v.* CLEMENT.

Opinion delivered April 2, 1928.

1. FIXTURES—MACHINERY SOLD WITH RESERVATION OF TITLE.—A gin elevator sold under contract retaining title to the seller until payment and expressly providing that it should not be considered a fixture, *held*, as between seller and buyer, not to constitute a fixture, and to authorize the seller to retake the property on failure to pay .the purchase price.

2. FIXTURES—DEFINITION.—Fixture is generally understood as property originally a personal chattel which has been affixed to the soil or to some structure legally a part of the soil, and which, being physically attached or affixed to the realty, has become a part thereof.

3. FIXTURES—INTENTION OF PARTIES.—As between seller and buyer of personal property, the intention of the parties is the real test as to whether the property becomes a fixture after sale.

4. FIXTURES—INNOCENT PURCHASER.—In view of the common knowledge that gin machinery is sold in this country on time, with reservation of title, one who purchased real property without inquiry to ascertain whether a gin elevator had been paid for, *held* not an innocent purchaser as respects the right of the seller to retake the elevator under a contract-retaining title.

5. DAMAGES—DETENTION OF GIN ELEVATOR.—The measure of the damages for detention of a gin elevator *held* the usable value of the property.

Appeal from Jefferson Circuit Court; *T. G. Parham,* Judge; reversed.

*Joe S. Harris* and *George A. McConnell,* for appellant.

*Rowell & Alexander,* for appellee.

MEHAFFY, J. The appellant, who was plaintiff below, filed its complaint in the Jefferson Circuit Court in replevin, alleging that it had sold to J. M. Gracie one 50-inch class C elevator for 4-70 saw gins (except fan and telescope), also a pulley and some belting. It was alleged that Gracie purchased this property and agreed to pay the sum of $750 and the freight, amounting to $63.05. Plaintiff alleged that it retained title to the property until the purchase price should be paid, and that nothing had been paid on purchase price or freight, the plaintiff hav-

ing prepaid the freight. The plaintiff alleged demand for the property and $150 damages for wrongful detention of same, and prayed for the possession of the property, and damages.

An affidavit and bond were filed, and a writ of replevin issued. The New Gascony Investment Company filed a cross bond in the sum of $1,200, and retained possession of the property. Defendants filed an answer, denying the material allegations of the plaintiff's complaint, and stating that Clement had no interest in the litigation, but that the New Gascony Investment Company claimed to be the owner by purchase.

A jury was waived and the case was tried before the court sitting as a jury, and the court rendered judgment for the defendant. Plaintiff filed motion for new trial, which was overruled, exceptions saved, and plaintiff prosecutes this appeal to reverse the judgment of the circuit court.

The undisputed evidence showed that the Continental Gin Company, on the 16th day of July, 1925, sold and delivered to J. M. Gracie the property described, and that the sale was evidenced by a sales contract, wherein the title to said property was retained by the plaintiff until the full purchase price should be paid; that no part of the purchase price had been paid, and the freight had not been paid. The contract contained the following clause:

"It is understood that the title to said machinery shall remain in you and the same shall be your property until payment in full for same is made, and until all other sums herein agreed to be paid are paid, and if default is made in the payment of either of said notes when due, or in payment of any other sum herein agreed to be paid, then you, at your option, may enter upon the premises where said machinery is, take possession of and remove the same, without being liable to account for any sum or sums paid thereon, the sum or sums to be paid to be in payment for the use of said machinery. Said

machinery shall not become or be considered a fixture to the real property whereon the same is situated.''

The undisputed proof also was that plaintiff demanded possession of machinery before suit, and that defendants retained possession of the property. The testimony showed a fair rental value to be $150 for the season.

The elevator purchased by Gracie is a complete outfit, but he did not purchase the fan or the telescope, which is a part of the elevator, and the elevator cannot run without the distributor being connected with the line shaft, or without a fan. The elevator is used to elevate cotton from the wagon to the feeder, driving cotton to the feeder and feeding same to the gin.

The property sued for was not actually attached to the gin stands, but was placed directly over them, and held in position by joists resting upon the floor and nailed and screwed to the building housing the gin. The property sued for could be removed without physical damage to the gin stands and without material damage to the building.

J. M. Gracie, who purchased the machinery, had owned the land, but he had by warranty deed conveyed to his daughter, Sallie E. Gracie, on December 10, 1924, the land on which this gin was situated, for the consideration of $1. The land conveyed contained 960 acres, in Jefferson County, Arkansas. On December 13, 1924, three days after the land was conveyed to Sallie E. Gracie by her father, she executed a note and mortgage to secure the payment of $32,000. Then on June 3, 1925, Sallie E. Rose, who was before her marriage Sallie E. Gracie, executed a deed of trust to secure $5,000 indebtedness to W. C. Hudson and R. Carnahan. On January 6, 1926, Sallie E. Gracie, by special warranty deed, conveyed to W. C. Hudson and R. Carnahan the said 960 acres for the consideration of $5,000 and the assumption by the purchasers of the $32,000 debt above mentioned. At the time Miss Gracie executed the deed of trust above

mentioned, her father, J. M. Gracie, was managing the property.  This was in January, 1925.

The testimony tended to show that the gin could not be operated without the elevator, but that the elevator could be removed without material damage to the gin stands or the building.  The testimony shows that the defendant purchased the property without any knowledge that said property was placed in the building by the plaintiff, and without knowledge that plaintiff retained title to property.  After Hudson and Carnahan purchased the property, they conveyed the same to the New Gascony Investment Company, a corporation, whose stockholders are Carnahan, Hudson, Clement and McGeorge.

The court found the value of the property at the time of the trial was $600, and the usable value for the season was $150. But the court held that the property sold by plaintiff to J. M. Gracie became a fixture, and passed with the conveyance of the realty.

The only question for our consideration is whether the appellee, the New Gascony Investment Company, is an innocent purchaser.  As between the vendor of the property involved and the purchaser of said property it was not a fixture, and the vendor, having retained title, had the right, as against the original purchaser, to retake the property upon Gracie's failure to pay the purchase price.

The term "fixture," as generally understood, is property, originally a personal chattel, which has been affixed to the soil or to some structure legally a part of the soil, and which, being physically attached or affixed to the realty, has become a part of the realty.  It is annexed to the freehold for use in connection therewith and so arranged that it cannot be removed without injury to the freehold.

It is sometimes said also that the intention of the party making the annexation is the chief test, and that in case of doubt the intention has a controlling influ-

ence. But in the instant case there is no dispute as to the character of the property as between the original vendor and original purchaser. They agreed that they should not be fixtures, but it is contended by the appellee that, while title was retained to the property until paid for, it was sold to J. M. Gracie, who was a tenant, and it is urged that the court has decided many times that if a landlord was ignorant of such reservation of title and the machinery was of such character that, when attached, it could not be removed without injury to the freehold, then it would become a fixture, and the vendor was not entitled to recover.

Attention is called to a number of decisions of this court which, it is claimed, support the contention of appellee.

The first case cited and relied on is the case of *Peck-Hammond Co.* v. *Walnut Ridge School District*, 93 Ark. 77, 123 S. W. 771.

The facts in that case were that a school board entered into a contract with one J. S. Park for the construction of a schoolhouse. The plans and specifications, which were a part of the contract, provided for the installing of a heating plant. Peck-Hammond Company furnished the material and installed the heating apparatus under a contract with Park. The title to the material furnished was to remain in the vendor until paid for. The board paid out more than the contract price to erect the building, and knew nothing of the terms of the contract between Park and Peck-Hammond Company, and Park failed to pay, and the vendor brought suit in replevin to recover the property. The evidence was conflicting as to whether the material could be removed without defacing and otherwise injuring the building. The lower court dismissed the complaint, and plaintiff appealed. This court said the judgment was right, and that the cases cited by appellant are cases where the contract reserving title in the chattels was made with the owner of the land, and have no application to the facts

of this case, and said further that the case of Peck-Hammond against the stockholders was ruled by the principle announced in *Brannon* v. *Vaughan,* 66 Ark. 87, 48 S. W. 909.

In the case in the 93 Arkansas the proof tended to show that the material could not be removed without defacing and injuring the building, but also it was shown that the directors had no knowledge of the conditions of the contract for material furnished.

This court has held that a house built upon land and not attached to the land, except by its own weight, was not a fixture, under the agreement of the parties. It was held, however, that another room built onto the orig inal one, without any notice to the vendor until afterwards, was a fixture, since it was attached to the main building, and could not be detached without great injury and damage to such building, evidently meaning that, if could be removed without injury, it would not be held a fixture. *Brannon* v. *Vaughan,* 66 Ark. 87, 48 S. W. 909.

Appellee next calls attention to the case of *Thomas Cox & Son Machinery Company* v. *Blue Trap Rock Company,* 159 Ark. 209, 251 S. W. 699. In that case the court held that the lower court had erred in declaring as a matter of law that the articles sued for were fixtures, and further held that, if title was reserved and appellant knew at the time Fulton intended to attach it to the realty of the company, and if appellant knew that the same was of a character that, when attached, would become a fixture, and could not be removed without injury to the freehold, and if the company was ignorant of the fact that the appellant had reserved title to machinery for which the notes in controversy were executed, then the appellant would not be entitled to recover. But the appellee contends that the case of *Hachmeister* v. *Power Mfg. Co.,* 165 Ark. 469, 264 S. W. 976, is controlling in this case. The court said:

"It was wholly beyond the power of the makers of the deeds of trust or the mortgagees to pass title to

or to place a mortgage lien upon chattels which they did not own at the time the deeds of trust were executed and the title to which they did not have at the time these chattels were attached to the freehold embraced in the mortgages." And the court quoted with approval the following language:

"When a chattel is sold with a reservation of title in the vendor until the price is paid, the title remains in him until the condition is performed, and a purchaser from the vendee acquires no title, though he buys in good faith for a valuable consideration and without notice of condition."

The court then cites numerous Arkansas cases to the same effect.

Appellee next calls attention to the annotation to the case of *Lawton Press Brick & Tile Company* v. *Ross Heifman T. P. M. Co.*, in 49 L. R. A. (N. S.), at page 396. The court said in the case last above mentioned:

"We think there is evidence reasonably tending to show that the machinery did not become part of the buildings constructed to shelter it; the removal thereof would not take away or destroy that which is essential to the support of such buildings, foundations, walls, or other parts of the real estate to which it was attached; that it would not destroy or of necessity injure the machinery itself. So the limitation hereinbefore stated does not apply. Hence we conclude that the agreement between the vendor and brick company, fully expressing their distinct purpose that the annexation of the machinery should not make it part of the real estate, was sufficient to that effect, without any concurring intention on the part of the subsequent purchaser of the land."

Most of the annotations or notes to which appellee calls attention are from cases where the facts show the property could not be removed without injury to the realty. It is also held in the cases referred to in the notes that a purchaser with notice of the rights of the

seller of fixtures cannot retain the fixtures in a suit for same by the vendor.

The appellee calls attention to numerous other authorities, but it would serve no useful purpose to discuss those authorities or to review the cases to which attention has been called by counsel.

The principles of law governing this case have been many times discussed by this court, and are well settled. And it has been repeatedly held by this court that, as between the vendor and purchaser of articles, the intention of the parties is the real test. *Thompson* v. *Lewis,* 120 Ark. 252, 179 S. W. 343; *Bache* v. *Central Coke & Coal Company,* 127 Ark. 397, 192 S. W. 225, Ann. Cas. 1918B, 198; *National Bank of Wichita* v. *Spot Cash Coal Company,* 98 Ark. 597, 136 S. W. 953.

But the chief thing relied on by appellee in this case is that it was an innocent purchaser, although, as between the original vendor and vendee of the property in controversy, the property remained a chattel, it purchased the property without notice, and that it was an innocent purchaser, and therefore as to it the property is a fixture, and cannot be removed by the plaintiff.

This court has said:

"This instruction excludes the idea that it was the duty of appellant, in order to bring himself within the doctrine of innocent purchaser, to make inquiry concerning the ownership of fixtures of this character, even though substantially fastened into the soil. It is true appellant testified that he inquired from his vendor concerning the ownership of the fixtures, and was informed that they were a part of the real estate. He was an interested party, and facts established by his testimony alone cannot be said to be established by the undisputed evidence." *Salmon* v. *Boyer,* 139 Ark. 236, 213 S. W. 383.

In the instant case appellee does not seem to have made inquiry of any one. It is a matter of common knowledge that property of the character of that involved in this suit is purchased in this country on time, and that

contracts for this kind of property are constantly made wherein the title is retained until paid for. And in purchasing property under the circumstances existing in this case it was the duty of the appellee to make inquiry and ascertain whether this property belonged to the vendor of the real estate.

Hudson and Carnahan knew that the owners were indebted, and that the property was mortgaged for $32,000.

J. M. Gracie, on December 10, 1924, conveyed the property to his daughter, Sallie E. Gracie, for the consideration of $1. Then on December 13, 1924, three days later, Sallie E. Gracie mortgaged the property to secure payment for $32,000. On June 3, 1925, Hudson and Carnahan loaned Sallie E. Rose, formerly Sallie E. Gracie, $5,000, and of course they knew of the $32,000 indebtedness. After they had loaned the $5,000 on July 16, 1925, the appellant sold the property involved in this suit to J. M. Gracie. It is true that they testify that when they purchased the property they took into consideration this property and its value, but when they loaned the $5,000 this property had not yet been purchased. They loaned the $5,000 before this property was installed there, when they knew that there was indebtedness against it for $32,000, and when they finally purchased the place they gave $5,000 and assumed the payment of the $32,000 debt. The knowledge that the parties must have had of all these facts required them to at least inquire of the parties who sold this property before they could bring themselves within the doctrine of innocent purchaser.

From the evidence in this case we have reached the conclusion that the property was not a fixture, and that the appellee was not an innocent purchaser. The case is therefore reversed, and remanded with directions to enter judgment for the Continental Gin Company for the property or its value, which the court found to be $600, and for the damages for the wrongful detention of said property. The damages for detention would be the usable value of the property. It is so ordered.