Wright, J.,
delivered the opinion of the court.
By contract of the parties, executed March 2, 1899, plaintiffs undertook to provide, furnish, and deliver at their own risk and expense, at the harbor of Honolulu, Hawaiian islands, beginning and within thirty days from the date of the contract, all the necessary materials and labor, tools, and appliances for the construction and completion, in all respects, of two wharves, and to complete the same in twelve calendar months from the date of the signing the contract, in strict accordance with, and subject to, all the conditions and requirements of the plans and specifications appended to and made a part of the contract, for the sum of $49,900.
Previous to the making of the contract notice or request for proposals for the wharves referred to in the contract, and the excavation of slips for same, had been issued by the Bureau of Equipment, Navy Department, Washington, such proposals to be based upon the plans and specifications which are now attached to the contract. The contract for the dredging was separately let to Buckman & Campbell, and because the wharves could not be built until the dredging was sufficiently advanced to enable the work to proceed, nothing could be clone within thirty days, as provided in the contract, and this time limit was disregarded -by the parties, and the time for the completion of the work was from time to time extended, and the wharves were not finished until December, 1900, a delay of more than eight months beyond the time stipulated, caused, as it is contended, bj^ the.fault of the dredging contractors in failing to do that work in time, and for which the defendants’ officers under the terms of the contract with the dredgers penalized them for such delay in the sum of $16,150.
Petitioners completed the work required of them by the contract and were paid in full by the defendant without prejudice to the claims for which thejr seek to recover in the present suit, which latter, as described in the petition, consist of damages on account of delays and interruptions due to the failure of the defendants to complete the necessary dredging and other preliminary work, in consequence of which they were compelled “to retain their machinery idle, and employees unemployed at Honolulu, all at a loss, for a great part of *545 one Hundred and eighty-eight working days, to wit, for at least one-half of that period of time, and to pay the said employees full wages for the said number of days, whether employed or idle, and to sustain the loss from idleness of said machinery, altogether at a cost to petitioners of $11,440.’’ A further item, of loss, by reason of the delay of the dredge work, consists of $1,179 petitioners paid to their subcontractors, Vincent & Belser, for laying the bitumen required by the contract, the said subcontractors having been delayed in their work, bj’ reason of the fault of the dredgers, one hundred and thirty-six working dajrs, at a cost of the sum before mentioned. The petition also claims for extra work of waling $77.80, and for labor and expense beyond the scope of the contract to the amount of $2,531.28. The latter item is claimed for the reason, as alleged, that the dredgers excavated beneath the wharves to a much greater depth than the specifications for the dredging required, upon which latter alone petitioners based their bid for the superstructure, and in consequence of such greater depth longer piles were required, exposing greater length of surface to be sheathed with yellow metal, increasing the expense of the metal over that required bj^ the contract $2,531.28.
As regards the item of waling, the specifications require it, but it is not disputed it was directed to be omitted by the officer in charge, and was not estimated by petitioners in their bid for the work, but by some inadvertence the specification was left unchanged in that respect, and the wale was put on by plaintiffs’ workmen because of the neglect of information that it was to be omitted. This item, therefore, resulted from petitioners’ own inattention, and for such reason they can not recover.
The item for the expense of additional sheathing is based upon the fourth specification, entitled “Dredging,’’ which provides that the whole area of each slip bounded by the lines shown on the plan shall be dredged to a depth of 28 feet below mean low water. The sides of the dredged area shall be finished vertical if the material will stand. In measuring-quantity, excavation below 28.5 feet and 'beyond slopes of 4 vertical to 1 horizontal will be deducted and not paid for. It *546 is plaintiffs’ insistence that in estimating for length of piles and sheathing they construed this specification to mean there would be no excavation beyond slopes of 4 vertical to 1 horizontal. This may be true, yet the specification can not, we think, be construed as a guaranty by the defendant that in no event would the excavation exceed that limit, for it merely provides that no payment should be made for such excess, should it occur. In contemplation of the parties, what event would likely happen to cause an excess beyond the limit of the specification ? The event is portrayed by the expression, “if the material will stand,” and this quality of the bottom was equally open to investigation by both parties, and plaintiff therefore took the chances of that which probably happened — the caving of the slopes to some extent, thereby enlarging the excavation beneath the wharves, creating the requirement for greater length of piles and sheathing. It is true petitioners contend that the extra excavation was occasioned by the neglect or incompetence of the dredge workers, but we are indisposed to assume that they would take upon themselves a greater burden than was necessary, and it is hard to imagine that neglect or incompetence, if it in fact existed, would lead to unnecessary excavations beyond the confines of the lines marked out upon the plans. It does not appear to our satisfaction that the excess of excavation could have been avoided by ordinary care. The more natural and reasonable inference from the whole evidence, if inferences are to be indulged, is that the banks would not stand on the specified slope, and the material slipped to the bottom, from whence it was taken. If-we are correct in this reasoning, the burden of the expense of additional length of piles and sheathing made necessary by excessive excavation was assumed by plaintiffs under the terms of their contract, and for this item they can not recover.
That there -was delay in the dredge work that prevented plaintiffs from completing the wharves is beyond dispute. That it was unreasonable delay by the dredge contractors is evidenced by the fact that the defendant deducted from their pay upon the contract $16,150. That plaintiffs were not at fault in the delay of the completion of the wharves is evidenced by the fact that defendant extended from time to time *547 the time of such completion, and when that was accomplished paid them in full, without deduction, the contract price, and this, too, without prejudice to this suit. In truth, from a consideration of the whole evidence it is indisputable that the reasons for the delay put upon plaintiffs was well understood during the time of its occurrence and duration, and the officers of the defendant did all they could to lessen the worst effects of it. Part of the time covered by the delay so occasioned plaintiffs obtained and performed other work and received compensation therefor, and a portion of the time of their employees was also covered by employment, at less wages, however, than plaintiffs were obliged to pay them. Upon the findings we feel warranted in the conclusion that justice requires that defendant compensate the plaintiffs for the reasonable damages the latter have sustained in consequence of the delay in the prosecution of their work, caused by defendant’s dredge contractors’ failure to diligently prosecute their work. The right of this conclusion, it seems to to us, is made more manifest by the fact that defendant has indemnified itself by deductions from the pay of the dredge contractors.
The measure of the damages to plaintiffs should be the actual and direct loss to them occasioned by the delay, as near as it- can be ascertained, not remote or speculative damages that would not have been anticipated by the parties upon the happening of the events that caused the dela,y. Without discussing the various elements in plaintiffs’ contention, composing these damages, we think it is a sufficient statement of the proper rule to be applied that the plaintiffs are entitled to receive the value of the services of their employees and machinery during the time of the delay in the business in which they were then engaged, diminished by compensation actually received by them for other services performed during the same period. It is not without difficulty that this amount can, from the evidence, be ascertained. We have, however, the basis of the petition to start with, which gives ninety-four working days for the period of ioss for idle machinery and unemployed employees. Upon the whole evidence this number of days is, we think, clearly proved. In the cross-examination of one of the claimants he fixed the value of the *548 machinery at $19 per day and the wages of the crew of six men at $21 per day, a total of $40 per dajr, which we consider reasonable, except the value of the use of the machinery, which we reduced to $10 per day. This would give $2,914 for this item, for which we think claimants are entitled to recover. The subcontractors for laying the bitumen were delayed by the same causes, for which plaintiffs paid $1,179, and from all the evidence in the case, upon which our findings are based, we are convinced this sum did not exceed the actual damage the subcontractors sustained; It is our conclusion that plaintiffs are entitled to a judgment for $4,093, and it will be entered against the defendant accordingly.