Green, Judge,
delivered the opinion of the court:
This suit is begun by plaintiffs to recover sums alleged to be due upon two contracts whereby plaintiffs agreed to do certain dredging for the defendant, and defendant was to pay therefor in accordance with the amount of dredging performed. Of these two contracts, the second was supplemental to the first. The plaintiffs performed the first contract in accordance with its terms and provisions, but allege defendant withheld $321.37 of the amount which thereby became due, and only paid the balance.
Plaintiffs also performed the second contract, and allege that defendant withheld $403.62 from the amount which was admitted to be due plaintiffs on completion of the contract, and that additional sums are due thereon by reason of the manner in which the contract provided that payment should be made.
The pleadings in the case take a wide range but the matters actually at issue between the parties are as follows:
First, whether the defendant withheld fronij payment $321.37 of the amount which was due the plaintiffs on completion of the first contract. In this connection it should be said that defendant concedes in argument that $403.62 was withheld in making payment to plaintiffs on the second contract from the amount admitted to be due.
Second, whether under the supplemental contract anything more is due plaintiffs beyond the amount alleged to have been withheld in making payment therefor as stated above.
*677 Third, whether defendant is entitled to recover anything upon its counterclaim for alleged overpayment on the second contract.
Taking up the first matter at issue, we find that there is no direct evidence that $321.37 was deducted by defendant from the amount due plaintiffs for performance of the first contract and only the balance paid. It would have been very easy for either party to have furnished testimony which would have shown whether anything was withheld in making payment on the first contract, but this was not done and the court is forced to consider the circumstances shown in evidence which bear upon this question, at the expense of some time which otherwise would not have been necessary. We find that there is some evidence tending to support plaintiffs’ claim, and there being none to show that the sum in controversy was paid, the proof is sufficient. In any event the state of the record renders the defendant’s plea with reference to this matter unavailing. There is no dispute but that the contract was fully performed by the plaintiffs. It follows that the sum which the contract provided should be paid on performance then became due. This having been established, the weight of authority is that the burden of proof is upon defendant to show that payment was made, and there is no claim that there is any evidence even tending to show payment.
Taking up now the claims of the plaintiffs made under the supplemental contract, we find that this contract provided that plaintiffs should receive $0.34 for each cubic yard of material dredged, and that this price was as stated in the contract “ based on the assumption that the Government will furnish to the contractor free of charge, at the Navy fuel tanks, St. Helena, Norfolk, Virginia, as and when required, 1.4 gallons of fuel oil for each cubic yard of material dredged.” At 1.4 gallons per cubic yard dredged, the fuel oil amounts to 10,167% barrels. As to this amount there is no dispute. Plaintiffs purchased 3,147 barrels of fuel oil for which and the cost of transportation to the dredge they were reimbursed by the Government. The Government also furnished plaintiffs from the Navy fuel tanks 5,010 barrels free of charge, leaving 2,010% barrels which were not delivered *678 and for which settlement was not made. The market value of the oil at Norfolk at the time of the conclusion of the contract, and when it was ascertained that the 2,010% barrels remained due was $4.41 per barrel. Plaintiffs demanded the market price of the undelivered oil, but about December 29, 1920, the Chief of the Bureau of Yards and Docks ruled that in lieu of the delivery of oil the contractor was entitled to the value of 2,010% barrels of oil at the so-called Government price of $1.59 per barrel, or $3,196.695. Payment was made upon this basis and plaintiffs executed a qualified release reserving the right to bring suit upon their claim, and the Government deducted and withheld from plaintiffs $403.62 which is still retained. The specific issue on this item of plaintiffs’ claim is whether plaintiffs, under the terms of the contract, were entitled to demand the undelivered oil, and, as it was not delivered, to recover the market price of the oil at the time of the completion of the contract.
This issue makes it necessary to determine the proper construction of the contract as applied to the undisputed facts. The evidence shows very plainly that the officials of the Bureau of Yards and Docks understood the contract to mean that the contractor would receive for each cubic yard of material dredged and deposited in accordance therewith a specified sum in money and also 1.4 gallons of fuel oil. In fact the Chief of the Bureau of Yards and Docks who executed the contract on behalf of defendant wrote plaintiffs a letter to that effect. It may have been expected that the plaintiffs would use the fuel oil in operating the dredge, as they did to some extent, but there was nothing in the contract that bound them so to do. The amount of fuel oil which they were to receive was not to be determined by the use to which it was to be put but by the number of cubic yards excavated and the fact that they used electric power instead for a large portion of the work is immaterial. Plaintiffs claim that the evidence shows that this use of electric power was both necessary and economical under the particular cricumstances of the work, but we do not find it necessary to pass on this point. It is contended on behalf of defendant that plaintiffs were not entitled to receive the oil at all except as it was needed to operate the dredge, and that *679 in any event the Government could pay for it at what was known as the Government price, or cost to the Government. This contention is based upon the statement in the contract which recites that the oil was to be furnished “ as and when required,” and it is said that these words meant only that plaintiffs were to receive the oil when “ in imperative need ” of it. It is true that the word “ require ” is sometimes used as synonymous with the word “ need,” but more often the word “ require ” means to demand, request, or ask of right, and numerous authorities could be cited to show that in similar cases the courts have given it this meaning. (See Ann. Cas. 1912 A, page 1231; also Duhamel et al. v. Port Angeles Stone Co., 59 Wash. 171; and Federal Lead Co. v. Swyers, 161 Fed. 687, 692.) The contention of the defendant is without merit, and as plaintiffs were entitled to the oil they were also entitled to receive the market price thereof when defendant failed to deliver it. This must be ascertained from the price on the open market and not from a special price on very large amounts taken each year for several years which was the manner in which the Government price was obtained. The evidence shows this market price was $4.41 a barrel. In making settlement the so-called Government price of $1.59 a barrel was paid, leaving $2.82 per barrel due.
As the defendant’s counterclaim depends on the same matters which have just been considered, it will next be taken up. It is alleged in the counterclaim that the defendant paid plaintiffs $3,196.69 on account of 2,010(4 bal-rels of fuel oil at $1.59 per barrel not required or used by the plaintiffs for dredging in the performance of the contract, and that said payment was without consideration and mistakenly made by reason of which the sum of $3,196.69 is now due the defendant. It is apparent without further discussion that this claim is based upon the same theory which defendant advanced as a reason for denying plaintiffs’ claim for the value of the oil not delivered at market price. It is therefore equally untenable and the counterclaim must be dismissed.
Plaintiffs also make claim for damages on account of the delay resulting from the failure of the Government to remove the two sunken torpedo boats lying near the “ moor *680 ings for targets ”' and the sunken barges in time for plaintiffs to proceed with the work without interruption, and also for damages alleged to have been sustained by reason of the' failure of'the public-works officer to give notice of the place where part of the excess dredging was to be performed, as required by the supplemental contract.
The evidence shows that delay was caused by defendant in the manner alleged by plaintiffs on one occasion for over fourteen hours'and at another time for over ten hours. The result was that the plaintiffs could have completed the job about twenty-five hours earlier had they not been delayed in the manner above stated. There is testimony to the effect that the “ rental value ” of the dredge was $100 per hour and also that'its “ value ” to the plaintiffs was the same amount. On the former hearing the court considered that this testimony was based solely upon what the dredge was earning on a particular contract and that it therefore was not competent, as' dredges may earn a large sum on one contract and be operated at a loss on another owing to the difference in the character of the work to be done and the contract price taken together. Upon a reexamination of the testimony, we have concluded that the competency of at least one of plaintiffs’ witnesses to show the value of the use of the dredge was established by evidence of long experience in its operation' and knowledge generally with reference to work performed by dredges, but we are not satisfied that $100 per hour is a fair and reasonable rate to be fixed upon the value of the use of the dredge. This would be $2,400 per day (the dredge being operated continuously), $72,000 per month, and $864,000 per year. It is obvious, however, that these figures do not take into consideration the risks of the business, the contingencies upon contracts being obtainable, and when obtained being profitable, and a large number of other matters. While there is no testimony to the' contrary except that of plaintiffs’ president that this rate would only apply to short periods and for a number of months’ operation would be considered high, the court is not concluded by the opinion of expert witnesses but may use its own judgment. See The Conqueror, 166 U. S. 110, 133, and cases cited. Considering all of the mat *681 ters and circumstances shown by the evidence, we think the fair value of the dredge is $50 per hour.
We find, therefore, that plaintiffs are entitled to recover—
(1) Market value of 2,010% barrels of fuel oil, at $4.41 per barrel, less $1.59 already paid, or $2.82 per barrel, amounting to_$5,669. 61
(2) Damages resulting from delay caused by defendant’s failure to comply with the provisions of the contract- 1, 250. 00
(3) Amounts due and retained without right: Under original contract_ 321. 37
Under supplemental contract (admitted to have been retained)_ 403.62
Total_ 7, 644.60
for which it is accordingly ordered that judgment be entered.
Williams, Judge; Littleton, Judge; Graham, Judge; and Booth, Chief Justice, concur.