Jones, Judge,
delivered the opinion of the court:
In 1934 the Interior Department invited proposals for the construction and equipment of a heat, light and power plant for Howard University, Washington, D. C. It asked for bids covering the entire construction, and also for separate proposals covering the seven different divisions into which the work was segregated.
Plaintiff, a Delaware corporation with its principal place of business in Washington, D. C., submitted a bid covering the entire project, as well as separate bids covering the several different divisions.
It so happened that the aggregate of the bids on the seven separate proposals was less than any one bid for *363 complete construction. Seven separate contracts were therefore awarded to six different contractors.
Plaintiff was awarded the contract for the shell of the building. The contract was entered into on July 28, 1934. The contract price for plaintiff’s assignment was $195,440.00. The work was to be completed within 300 days from July 28, 1934.
The facts are set out in detail in the special findings.
For the sake of clarity the time required for the performance of plaintiff’s contract is divided into three periods: from the date of the beginning of the work on July 28, 1934 to January 28, 1935, when all construction ceased; the shutdown period from January 28, 1935 to July 23, 1935; and the period from July 23, 1935, when work was resumed, to March 1, 1936, when the contract was substantially completed. We shall treat each of these periods separately.
Except for the items set out in Finding 7, we do not think that plaintiff is entitled to recover any damages for the first period — that is, prior to January 28, 1935. It is true that an underground stream was discovered which was not contemplated by the parties. Plaintiff, however, was awarded Extra Work Order No. 1 and an additional sum of $4,850.00 to cover the excess costs of the extra construction, as well as certain items of extra expense which were occasioned thereby. The time for completion of the contract was extended 88 days. Joseph Bahen, of the plaintiff firm, testified as follows:
XQ67. The delay experienced as the result of change order No. 1 — is that a part of your complaint?
A. Change order No. 1 ?
XQ68. Yes; that dealt with the subterranean stream?
A. That was taken care of. We estimated that stoppage at that time, and that was paid for.
J. H. Wright, plaintiff’s secretary and treasurer, testified as follows:
Q. 57. Will you explain what this extra order No. 1 was, and how it was occasioned?
A. Yes, sir; this extra order No. 1 amounted to $4,850. That was occasioned primarily by'the under *364 ground stream that was encountered in tbe northeast corner of the foundations. But as well as that, there were changes made to these various drawings that we had asked for information from the architect, which was also incorporated into this extra order.
Now, the method in which this extra order was arrived at was a meeting with Mr. Cassell, the architect, his engineers, Mr. Beauchamp, my estimator, and myself. We studied the condition that caused this change, and estimated the various quantities, and agreed with the architect as to what was correct. He approved this estimate and put it through as an extra order.
Q. 58. Will you state what items compose that total of four thousand odd dollars ?
A. The extra work of the Raymond Concrete Pile Company, who had a subcontract with us for driving the concrete piles amounted to $2,933. We had reinforcing steel, in connection with this foundation, of 450 pounds at 4 cents a pound, or $18. We had a job overhead, which meant the superintendent, our engineer, our foreman and watchman on the job. Overhead was permitted in this from October 2 to November 5, amounting to $521.33.
Q. 59. Was October 2 the date on which this stream was discovered?
A. Yes, sir. Now, we give credit for 52 cubic yards of excavation at 70 cents a yard, making $36.40; and of 35y2 cubic yards of concrete at $6.65 per cubic yard, or a total of $236.07, making a total net credit of $272.47. That credit, taken from the additional overhead, reinforcing steel and concrete piles, made a net additional cost on that item of $3,199.86. On top of that, we have ten percent office overhead, ten percent profit and iy2 percent bond. That makes the total of that item, $3,929.74.
Now, there was another item of total extra work resulting from revisions to sheet No. 16 of $920.26, which made the total for this extra order No. 1 of $4,850.
Under the decision in the case of Rust Engineering Co. v. United States, 86 C. Cls. 461, plaintiff is entitled to recover the sum of $111.57, extra costs necessarily incurred as a result of the discovery of extraordinary conditions not contemplated by the parties to the contract.
*365 Plaintiff sets out several other items of claim for extra •costs which he asserts were due to various small delays which occurred during the first period. However, these were no more than should have been reasonably contemplated in the execution of a contract that was divided into ■seven different portions, and which was awarded to different contractors. In the ordinary course of events it could not have been expected that the work could be coordinated ■as well by separate contractors as if the entire project had ■been awarded to one contractor. We think that the additional sum allotted for the purposes indicated, which was ^agreed to by the parties, and which is itemized in part in the testimony of Wright, quoted above, was reasonably ■.■sufficient, when added to the other sums that have been •allowed, to cover the damages and excess costs which occurred during the first period. At any rate, the evidence ■as to any further costs during that period is neither definite nor satisfactory.
The second period falls into a different category. In this period all construction operation on the power plant was stopped for a period of 175 days. This stoppage was through no fault of the plaintiff. The defendant concedes responsibility for the delays thus brought about. It disputes only some of the items of expense claimed by the plaintiff.
The shutdown was for a period of 175 days. Some organization expense, as well as extra labor costs, were neces•sarily incurred during that period. Deterioration of machinery and equipment was inevitable. The items are -.clearly proved and the damages definitely established..
Plaintiff is entitled to recover the excess costs made necessary by this delay and the damages directly flowing therefrom, in the amount of $5,881.26.
There were certain extra costs and expenses for the third period which were made necessary by the delays that had -occurred through no fault of the plaintiff, and which would not have been incurred but for such delays. These are set •out in Finding 12. Becovery should be had for these items.
*366 Storage of certain materials was made necessary for a longer time than any of the three periods. A reasonable allowance therefor is justified.
Plaintiff is entitled to recover the sum of $7,409.64. It is so ordered.
Madden, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.