**BRAND INV. CO. v. UNITED STATES.**

No. 44617.

Court of Claims.

June 5, 1944.

Milton Roberts, of Detroit Mich. (Max N. Freeman, of Detroit, Mich., on the brief), for plaintiff.

W. A. Stern, II, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen. (Mary K. Fagan and Milton Kramer, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, and MADDEN, Judges.

MADDEN, Judge.

■ The plaintiff made a contract with the Government for the construction of a Post Office building at New Castle, Pennsylvania. While the work was under way, the Government issued a telegraphic stop order, which is quoted in finding 5. This stop order was not lifted for 113 days, and the plaintiff was actually stopped in its work for 109 days. It claims that the stop order with its consequent delay was a breach of the contract and seeks damages. The Government undertook, at the hearing before the commissioner of this court, the burden of justifying the stop order and its duration, but presented no evidence at all to sustain that burden. It therefore properly concedes that the stop order was, so far as the evidence shows, unjustified, and we have so found. Being unjustified, it was a breach of the contract.

The remaining questions in the case have to do with some items of alleged damages. The plaintiff asks for a part of the cost of maintaining its main office during the period of the delay, proportionate to the relation which this contract bore to the total amount of all of its then current contracts, plus a large additional amount to compensate for the fact that its executives devoted more· than a proportionate part of their time to attempts to get the New Castle job under way again during the period of the stop order. The Government urges that nothing should be allowed for main office expense, since it goes on regardless of what is happening on any or all of the contractor's jobs.

■ We are allowing the plaintiff a proportionate part of its main office overhead. While such an element of damage can never be proved with mathematical precision, it is standard accounting practice to attribute main office expense to various company operations on some fair basis and we follow that practice. While it is probable that the plaintiff's executives did devote more than a proportionate part of their time to the New Castle job during the period of the stoppage, the amount of that excess has not been proved with measurable definiteness.

■ The other disputed element of damage is the rental value of machines and equipment which the plaintiff had on the job, and which were necessarily kept idle during the period of the stop order. The plaintiff proved that machines of this type had a certain rental value. The Government urges that the plaintiff was not in the business of renting machines to others; that it would, probably, not have rented them even if they had not been tied up on this job by the indefiniteness of the duration of the stop order; that it has not shown that it had any other job on which it could have used them itself if they had not been tied to this job.

We think that the plaintiff is entitled to recover on this item of its claim. We do not allow the full amount of the rental value, since we recognize that, if rented, the machines would have suffered wear and tear which they did not suffer while idle on this job. But when the Government, in breach of its contract, in effect condemns a contractor's valuable and useful machines to a period of idleness and uselessness, we think that it should make compensation comparable to what would be required if it took the machines for use for a temporary period, but did not in fact use them. As a jury verdict, we allow the proved .rental value, discounted by one-half because of the absence of actual use with its resulting wear and tear. We think that the contrary view expressed by the court in Phoenix Bridge Company v. United States, 85 Ct.Cl. 603, 631, should not be followed.

The plaintiff may recover $6,215.62.

It is so ordered.

WHALEY, Chief Justice, and WHITAKER, Judge, concur.

LITTLETON, Judge (dissenting in part).

I do not agree with finding 9 allowing $2,915.75 as damages for "rental value of equipment" and that part of the majority opinion which holds broadly that where

there is evidence that equipment used by a contractor in performance of a construction contract with the Government has a "rental value," such rental *value* so shown, or as here, some lesser amount, i.e., one-half of the claim for 109 days, estimated without proof relative thereto, is allowable against the Government as damage by reason of delay caused by the Government. My objection does not go to the proposition that in a proper case equipment rental is not a proper item to be allowed as damages when it is proven by clear and convincing evidence that fair market rental prices were actually lost by reason of delay which made it impossible to rent the equipment or rendered it impossible to use it on some other available work. My opinion is that an actual loss or damage must be clearly proved and that mere inherent "rental value" alone, which is all we have here, cannot be allowed merely because there was unreasonable delay where it is necessary to assume (1) that the equipment *might* have been rented; (2) that it *might* have been used on other work, and (3) that the inherent "rental value" was only one-half of the total amount shown by the evidence submitted. This is guesswork. There must be proof of these facts.

I will agree that fair and reasonable rental for useful value, without profit, may, in a proper case, be used as the measure of actual damage or loss sustained on account of delay, if the proof is sufficient to establish such reasonable amount and further establish that the equipment could and would have been rented by the contractor if he had not been prevented from doing so, because the equipment was tied up on the work, or that it would have been used by the contractor on other available work for an equal period had the unreasonable delay, in connection with which damages are claimed, not occurred. If a profit on such useful value is proven by clear and direct proof, it may also be recovered. The fairness and reasonableness of the rental or useful value must be established by proper evidence. This is the rule which this court has always applied and which was applied in Ernest J. Cotton et al. v. United States, 38 Ct.Cl. 536, 543, 547, 548; Howard P. Converse et al. v. United States, 69 Ct.Cl. 670, 675, 680, 681; Phoenix Bridge Co. v. United States, 85 Ct.Cl. 603, 631, and other cases hereinafter mentioned. I am convinced that it is the correct rule to be followed, and that the Phoenix Bridge

Company case should not be overruled; otherwise, the court will be placed in the position of allowing damage which was not within the reasonable contemplation of the parties when the contract was made, and which is speculative, uncertain, and conjectural. If the rule above mentioned is applied in this case, plaintiff is not entitled, on the record, to recover any amount on account of the alleged rental value of equipment. Ordinary depreciation of equipment during a delayed period may be properly allowed as damage for delay if the amount of such depreciation is shown by sufficient evidence. Bahen & Wright, Inc., v. United States, 94 Ct.Cl. 356, 360, 361, 365. This case, in another aspect, will be discussed later.

The case of Cotton et al. v. United States, supra, involved a construction contract in Honolulu, T. H., and showed conclusively (although the court did not in the findings or the opinion discuss this phase of the case) that plaintiff had other work available in California (plaintiffs' principal place of business), in connection with which the equipment could and would have been used earlier had it not been for the delay of 94 days caused by the Government, and that the fair and reasonable actual value of such use was $19 a day. In that case there was an actual delay caused by the Government of 188 days, but for 94 days of such delay the equipment was used by the plaintiff on other work which it had nearby. There was further evidence that about $15 a day additional would represent a fair profit on a contract, or on a rental basis. Plaintiff claimed $25 a day as damages actually sustained on account of loss of use of his equipment valued at $17,000. The court, upon the proof submitted, made an ultimate finding of loss and damage and correctly allowed and approved an actual loss of $1,786 measured by the useful value of the equipment at $19 a day for 94 days.

In Converse et al. v. United States, supra, the court held on a new trial and under amended findings and supplemental opinion, April 21, 1930, that the contractor was entitled to recover as damages actually sustained on account of delay the fair and reasonable rental value of a dredge at $50 an hour for 25 hours under proof which was sufficient to establish that this was a fair measure of the value of the use of the dredge for the delay and that, except for the delay caused by the Government, the equipment would actually have been

used on other work and that such other work was available and awaiting the use of this equipment at Charleston, S. C. The court, after its attention had been called to this evidence, made an amended finding that "The plaintiffs had another contract awaiting the use of the dredge as soon as the same could be repaired and put in condition for such work. The fair and reasonable value of the dredge during the time lost was $50 per hour." It was on the basis of the proof and this finding that damage was held to be recoverable in the amount of $1,250.

In the original findings and opinion on the Converse case first published by the court March 3, 1930 (not reported in the Court of Claims reports, but see Vol. 553, Printed Records, Court of Claims), the court denied recovery on account of claimed useful value of the dredge based on a fair rental value on the ground that plaintiff had not proved it had sustained an actual loss in this regard on account of delay. In this opinion the court said:

"The evidence shows that delay was caused by defendant in the manner alleged by plaintiffs; on one occasion for over fourteen hours, and at another time for over ten hours. There is no evidence that plaintiffs lost anything by reason of payments to the working force while the dredge was idle. The plaintiffs could have completed the job about twenty-five hours earlier had they not been delayed in the manner above stated; but unless they had use for the dredge or could have leased it to some other party they received no damage from the delay. There is no evidence that the plaintiffs could have used the dredge on other contracts or could have leased it at any price. The plaintiffs' claim for damages on account of delays caused by the defendant must therefore be denied for want of proof of any damage resulting therefrom."

The evidence in the case at bar is incomplete on the matter of actual loss and is not like the evidence in the Cotton and Converse cases. The evidence here is very much like the evidence which was submitted in Phoenix Bridge Company case and the Bahen & Wright, Inc., case, in which the plaintiff introduced evidence as to what the "rental value" of such equipment as it would be, if rented, without submitting proof of the next step necessary to the recovery of actual damage sustained, namely, that if the equipment had not been tied up by delay by the Government it could and would have been rented or that plaintiff had other work on which it could have used the equipment at a date earlier than it was able to use it, because of the Government's delay. Even where the Government stops the work it is incumbent on the contractor to rent his equipment if there is a convenient and available market for it, or to otherwise use it if he can. In other words, in the Phoenix Bridge and the Bahen & Wright cases, it was not shown and the court could not assume that plaintiff had any other use for the equipment during the period of delay. It was for this reason that the claimed "rental value" was denied as damages shown to have been actually sustained. If a contractor can rent or use equipment during a delayed period and elects not to do so, he cannot recover damages based on a rental value. Cases will hereinafter be cited which show, I think, that the existence of a rental market or availability of other use of equipment or property, which cannot be availed of because of the delay, is the real basis for allowance of damages based on the fair value of such use where the complaining party is deprived of the use of such property or equipment, or the opportunity to rent it, by the act of another party.

At the same time the Phoenix Bridge case, supra, was decided the court, on the same day (November 1, 1937), decided the case of Schuler & McDonald, Inc., v. United States, 85 Ct.Cl. 631, in which it was found and decided, page 641, that the Company was entitled to recover $1,925 as "The reasonable rental value of the equipment for the additional time it was not available for other use because of the shut-down order." Subsequently, on December 5, 1938, the court decided the case of M. H. Sobel et al. v. United States, 88 Ct.Cl. 149, in which the court found and held, pages 159, 166, that plaintiff had proved damages of $4,020 as "the reasonable rental value of plaintiff's equipment which was kept on the job for that time," i.e., 90 days' delay by the Government. On June 9, 1939, the court decided the case of Wm. T. Joplin et al. v. United States, 89 Ct.Cl. 345, in which it was found and held, pages 353, 358, that plaintiff had proved damages of $34,500 measured by the "reasonable rental value of such equipment for the portion of that period [8 months] when such equipment could reasonably have been rented"—if the work had not been delayed by defendant.

Damage measured by the reasonable rental value was allowed in the three cases mentioned upon evidence sufficient to establish actual loss of useful value, either by rental in an available market or use on other available work. The question of allowance in each case was carefully considered in the light of the holdings in the Cotton, Converse, and Phoenix Bridge cases, supra. An examination of the record evidence in the Schuler, Sobel and Joplin cases reveals that plaintiffs had fairly established by sufficient proof all the elements necessary to their right to the amounts allowed as damages actually sustained. The evidence was such that the Government did not contest the claims, but apparently conceded that plaintiffs had by adequate proof established their right to actual damages measured by a reasonable rental value for the use of the equipment involved. In the Joplin case the defendant raised only the question whether plaintiff should have minimized its damages by renting the equipment when suspension of the work occurred, but the plaintiff proved and the court was of opinion that in the particular circumstances it was impractical for the contractor to do so because the equipment was located and tied up in an extremely rough section of Mt. Ranier National Park.

On June 2, 1941, this court decided the case of Bahen & Wright v. United States, supra, in which only reasonable depreciation of the equipment, as established by the evidence, was allowed as damages actually sustained. Reasonable rental value of certain equipment and depreciation of certain other equipment and materials were claimed by plaintiff, and considerable evidence was submitted relative to such rental values and depreciation (see Vol. 779, Printed Records, Court of Claims). Plaintiff in that case, like the plaintiff in the case at bar, confined its evidence almost entirely to what a reasonable "rental value" would be if rented, and submitted inadequate evidence of availability of other use upon completion had the delay of 175 days not occurred, and no convincing evidence of availability of a "rental market" or of the fact that at the end of the work, had it not been delayed, the equipment involved could or would have been rented. The contractor's evidence in that case was stronger and more to the point with reference to a rental market which could not be availed of than the evidence in the case at bar. Notwithstanding the vigorous and earnest contention of plaintiff in the Bahen & Wright case that damages measured by a reasonable "rental value" should be allowed as actual damages, sustained on authority of the Schuler, Sobel and Joplin cases, supra, the court did not think enough of the adequacy and strength of the proof that an actual loss of rental or useful value had been sustained to even mention the matter of "rental value" in the findings and opinion. This opinion in the Bahen & Wright case is a positive and recent approval of the uniform rule long followed by the court on such questions, and for which the Government contended in that case. The court overruled plaintiff's motion for a new trial based mainly on the alleged error of the court in refusing to allow damages measured by the "rental value" of equipment claimed for the period of delay.

I shall not undertake to discuss in detail the evidence in the case at bar, on which plaintiff claims damages of $5,831.50 for 109 days' delay or $6,045.50 for 113 days' delay, for "rental value" of equipment. I think it is sufficient to show that plaintiff has failed to prove it sustained actual damages, on account of the items of equipment in question, to point out that the evidence is far from convincing that during this period of the depression (1933-1934) the various items of equipment, in respect to which "rental value" is claimed as actual damages, could or would have been rented for any amount, and certainly not for 109 days' or 113 days' delay at the obviously high daily rates listed and claimed. There is no proof whatever that plaintiff had any other construction work in connection with which this equipment could or would have been used at a date earlier than it was needed or used after the New Castle job was completed. It is obvious that plaintiff had no other work on which this equipment could or would have been used soon after the New Castle job for if it had such work or had lost the opportunity to obtain it, by reason of the Government's delay, it certainly would have submitted some evidence as to that fact. In plaintiff's requested findings filed with the Commissioner it requested the Commissioner to find that "The work would have been completed at least 109 days earlier had there been no enforced cessation of operations, and this equipment would have been released that much sooner *for use on other jobs on which plaintiff could have realized a profit.*" [Italics supplied.] No evidence on which such a finding of available use could be based was introduced.

Assuming that plaintiff might recover on proof only of a rental *value*, it appears from the evidence submitted and an examination of the list of the equipment and the rental rates claimed that plaintiff's claim is unreasonably high because it is based on "daily rental value" at hourly rates instead of on a monthly value; it is admitted in the evidence that the rates used are higher than the fair monthly rental rates would be. In the end, plaintiff was delayed about three and one-half months, and, if the Government is liable at all, I do not think it is liable for more than a reasonable "rental value" on a monthly basis. This would, on that basis, be the full measure of the damages actually sustained. The record affords no basis for such a computation.

The equipment involved, the rental rate claimed, and the total damages claimed to have been sustained on plaintiff's theory, that "rental value" alone should be used, are set forth on page 4 of plaintiff's exhibit 38 and in its requested findings of fact filed with the Commissioner for periods of 109 days and 113 days, as follows:

| Kind of Equipment | Daily rental rate | Rental for 109-day period | Rental for 113-day period |
|---|---|---|---|
| 1 1-yard concrete mixer | $ 7.50 | $ 817.50 | $ 847.50 |
| 1 ½-yard concrete mixer | 3.50 | 381.50 | 395.50 |
| 1 2-hoist-drum engine | 5.00 | 545.00 | 565.00 |
| 1 Brick cage | 1.00 | 109.00 | 113.00 |
| 1 Gasoline Pump | 1.50 | 163.50 | 169.50 |
| 1 Level | 1.00 | 109.00 | 113.00 |
| 1 Transit | 1.00 | 109.00 | 113.00 |
| 1 Five-Ton Truck | 15.00 | 1,635.00 | 1,695.00 |
| 1 Automobile | 2.00 | 218.00 | 226.00 |
| 500 Patent Roos Shores (at .03 per day each) | 15.00 | 1,635.00 | 1,695.00 |
| Sundry small tools | .50 | 54.50 | 56.50 |
| Office Equipment | .50 | 54.50 | 56.50 |
| Total | | 5,831.50 | 6,045.50 |

The majority opinion reduces plaintiff's claim of $5,831.50 to $2,915.75, but there is no evidence whatsoever on which this reduction can be justified. By doing this the court is acting as a witness in the case as to what equipment may or may not have a rental value and as to what that rental value would be. Without some evidence as to these facts, a jury would not be permitted to make such an estimate. United States v. Smith, 94 U.S. 214, 219, 24 L.Ed. 115. Plaintiff's proof of inherent rental value totaling $5,831.50 is much stronger and more to the point than is the proof of a rental market or loss of use. We should not reject the proof as to one fact and supply it as to another. The entire claim should be denied for lack of adequate proof of actual loss.

Since plaintiff computes its claim on a daily basis, it seems obvious that if there had been an available and ready market for rental of its equipment on a daily basis then plaintiff could and should have rented this equipment from day to day at hourly rates in order to minimize its damage. It had full possession of the equipment at all times. This would not have interfered with the orderly resumption of work. The proof shows that after the work was shut down it required some time to resume operations. The evidence shows that the rental *market* was such as to enable plaintiff to rent only one item of its equipment for $21.50 during the delayed period. If there was a rental market, as plaintiff claims, for the balance of the equipment, plaintiff should have rented it.

In the case of Wicker v. Hoppock, 6 Wall. 94, 99, 18 L.Ed. 752, the court said: " * * * where a party is entitled to the benefit of a contract, and can save himself from a loss arising from a breach thereof, at a trifling expense or with reasonable exertions, it is his duty to do it; and he can charge the delinquent party with such damages only, as with reasonable endeavors and expense, he could not prevent." The same rule was stated in another way in Smith v. United States, 11 Ct.Cl. 707, 711, wherein the court said: "A jury must take into consideration all the facts and circumstances of a case, and while excluding losses due to the negligence of the contractor, allow to him such damages as, with reasonable diligence and prudence on his part, would put him in the same situation at the end of the work that he would have been in if he had not been interfered with. On the one hand, the defendant in such a case is not required to pay more for the suspension which he has requested than it is reasonably worth; on the other, he is bound to make the contractor whole." See Shaboub v. De Lacie, Tex.Civ.App., 59 S.W.2d 954. In affirming this court, the Supreme Court in United States v. Smith, 94 U.S. 214, 218, 219, 24 L.Ed. 115, said:

"The Court of Claims has found the amount of damages to have been $5,000;

* * * not allowing anything for loss or injury to his materials, which he might have prevented by the exercise of reasonable care and prudence. This rule of damages, as an abstract proposition, is clearly right. * * * The United States can be required to make compensation to a contractor for damages which he has actually sustained by their default in the performance of their undertakings to him; but this is the extent of their liability in the Court of Claims. More than compensation for damages actually sustained can never be awarded against the United States. * * * In the estimation of damages the Court of Claims occupies the position of a jury under like circumstances. Damages must be proved. The court is not permitted to guess any more than a jury, but, like a jury, it must make its estimates from the proof submitted."

Damages, in order to be allowable, must be such as were within the reasonable contemplation of the parties to the contract and they must flow directly and naturally from breach of the contract; they must be not the remote but proximate consequence of such breach, and must not be speculative or contingent. The damages claimed by plaintiff in this case as "rental value" are, under the evidence of record, uncertain, speculative, and contingent. In United States v. Wyckoff Pipe & Creosoting Company, Inc., 271 U.S. 263, 267, 46 S.Ct. 503, 504, 70 L.Ed. 938, the court said:

"The contractor urges also that, because of the delay, it might have used the supplies purchased on another job, receiving on that their then market value, or might have sold them and taken the incidental profit due to the rise in values; and that, if it had done either and had been obliged later to purchase new supplies at the higher market values in order to perform the government job, the increased cost would have been recoverable as a loss; and that, as the amount of this increase has been found, the recovery should be sustained at least to that extent. The contractor's contentions, however, ignore the rule that damages for delay are limited to the actual losses incurred. The contractor elected to hold itself in readiness to perform its contract and to this end to retain both the lumber and the creosote oil. The carrying charges thus incurred are an allowable item of damage; but these were not shown. It may even be that in the event of a use or resale of the supplies, if under the circumstances such a course of action was open to the contractor, the profits made would have been available in reduction of damages. Compare Erie County Natural Gas & Fuel Co. v. Carroll, (1911) App.Cas. 105. But clearly it cannot now charge as a loss profits which it might have made if it had sold the supplies in the market or used them on another job."

From the evidence of record the conclusion seems to be inescapable that in the alleged "rental value" claimed in the tabulation above set forth plaintiff has included a considerable profit in such rental value. Whether it would have made such a profit is not proven by the clear and direct proof which the law requires for the recovery of profits. The Government is not liable for profits, as damages, on excess costs or losses due to delay where the contract is completed and where no extra work is involved. Profits that might be made on a rental or other contract are never allowable as damages unless they are established by clear and direct proof. Plaintiff's principal witness testified that in fixing the rental values claimed he made use of the values prepared and kept in plaintiff's records for the purpose of use, by plaintiff, in estimating and bidding on construction contracts. This is not sufficient to prove that such profits usually so included in contract bids would have been made on a rental basis. The proof shows that plaintiff was not in the business of renting its equipment.

In the case of M. H. McCloskey, Jr., Inc., et al. v. United States, 66 Ct.Cl. 105, 130, the court said: " * * * but the plaintiff will not be allowed anything for profit [on the loss and expense due to delay] which it might have made as that sum was included in the contract price which, under the judgment to be rendered herein, it will receive together with the damages caused by delay." The same rule was applied in Rust Engineering Co. v. United States, 86 Ct.Cl. 461, 475, and Gustav Hirsch v. United States, 94 Ct.Cl. 602, 635.

There is no evidence in this record that plaintiff, when making its bid, computed the charge included therein for use of equipment strictly on the basis of a 420-day period fixed by the Government for completion, or for a longer period in anticipation of some delay in completion. If in computing its bid it included a charge for the use of equipment, including profit, for a longer period than 420 days, it cannot recover twice for such use. In a suit for ac-

tual damage for delay such fact should be shown.

Ordinary depreciation of equipment during a period of unreasonable delay of 175 days caused by the Government was allowed as actual damages sustained under proof satisfactorily showing the amount of such depreciation for such period in Bahen & Wright, Inc., v. United States, supra. The Government in that case contended for that rule of measuring the damage, as it had contended in Cotton v. United States, supra, in which latter case the Government admitted depreciation of $555. Also, in the case at bar, the Government contends that the most plaintiff can recover is ordinary depreciation of equipment for 109-days, but it correctly insists that such allowance cannot be made since there is a complete absence of proof as to the amount of such reasonable depreciation.

It is said, in effect, in the majority opinion that in a case where the proof shows only that equipment had a rental *value* the court should make compensation comparable to what would be required of the Government if it took the equipment for use for a temporary period but did not, in fact, use it. The two situations are not at all comparable. In the case of a taking there would be a dispossession and an implied agreement to pay a reasonable compensation. We denied recovery of any amount in such a situation in the case of Excavating Equipment Dealers, Inc., v. United States, 93 Ct.Cl. 82, 90–97, because the proof did not show an implied agreement to pay reasonable compensation. The Government cannot be held liable for taking or deprivation of use of property even for a temporary period in the absence of a contract implied in fact to pay reasonable compensation therefor.

In the case of The Pensacola, 5 Cir., 263 F. 661, 666, damage for loss of useful value was allowed for breach of contract to tow a dredge. In that case a tug had been hired under a charter to tow a dredge to Mobile on a certain day, at which place the dredge was to engage in work awaiting it. The tug arrived four days late to begin the tow, with the result that the dredge was delayed for the same period in being put on the work. The owner was allowed as damages for the breach of the towing contract the reasonable value of use, or hire, of the dredge for the delay of four days. This case illustrates the rule that the proof should show not only that the owner was deprived of use, but that there was actual loss of use to the owner, and that the fair value of such use measured by reasonable hire for such period is the reasonable and proper measure of damage actually sustained.

In the case of a construction contract the equipment is dedicated to completion of the contract according to its terms, and when the contract is completed, as was the case here, the contractor receives his agreed price and profit for use of such equipment. There is no dispossession and there is no implied agreement apart from such implications as arise from the written contract to pay more, and the contractor can recover under the written contract no more than actual damages sustained. The reason is that the parties to the contract cannot be presumed to have contemplated that the Government would pay more than that. Theoretical damages cannot be allowed. If there is a rental *market* or other use available and the contractor elects not to avail himself of such rental market or use, he cannot complain that the other party has actually damaged him by delay. If there is undue interference and delay, the contractor can recover whatever he actually lost in connection with the equipment assigned to and used on the contract, as a result of the delay, but he must prove such a loss by showing that the nature of the delay or the peculiar circumstances were such that he could not take advantage of an available market, or otherwise use his equipment, and not merely that the equipment had an inherent rental *value*. On the other hand, where property or equipment is taken and held by the Government through some agent authorized to do so for a temporary period, there is an implied agreement to pay reasonable and just compensation therefor, whether it is actually used or not, and the best if not the only basis for fairly measuring the reasonable compensation to the owner in such a case is a fair usable value therefor or a fair rental price, without interest. United States v. Buffalo Pitts Co., 234 U.S. 228, 34 S.Ct. 840, 58 L.Ed. 1290; International Harvester Co. of America v. United States, 72 Ct.Cl. 707. The fair value of use to the owner is also the usual measure of damages for injury to or deprivation of use to the owner of ships and vessels in tort cases, as hereinafter more fully set forth, but, in such cases, the whole subject matter is the property itself and the value of its use to

the owner, rather than a claimed loss or actual damage for delay constituting a breach of a construction contract in connection with which certain equipment is used.

If one commits such an act as deprives another of his dwelling house, the measure of compensation to the owner for such deprivation would naturally be the fair value of use to the owner, even though the owner might not have rented the house during such period, and a fair rental rate would be a proper measure of compensation necessary to make the owner whole, but the situation would, I think, be different if the owner of the house had dedicated it to performance of a contract with the other person at a profit, and such other person had caused delay in completion of the contract and the release of the building to the owner. In such a case it would seem to be necessary for the owner of the house to prove that during such delay he sustained actual damage as a result of the breach of contract, in addition to proving the fact that such a house had an inherent "rental value." In other words, I think the owner of the house would have to prove that there was a rental market and that, except for the delay, he could and would have rented the house, or, that he would otherwise have made valuable use of the house upon timely completion of the contract.

When there is a direct taking or deprivation of use of property, there is an implication of an agreement to pay fair and reasonable compensation therefor, and reasonable rental or reasonable usable value is a proper measure of this compensation. However, when there is delay which constitutes a breach of contract in connection with the performance of which the property or equipment is used, there is an implication of an agreement to pay *only damages actually sustained* and an actual loss must be proved;—compensation is the fundamental principle, but actual loss is the measure of this compensation.

In Smith v. Gunn, 57 Tex.Civ.App. 339, 122 S.W. 919, 920, the contractor delayed construction of a building beyond the time fixed, and the owner sued to recover damages measured by the reasonable rental value of the building during the delayed period—the court said: "There was also error committed in that portion of the court's charge which instructed the jury that if there was inexcusable delay in the construction and delivery of the building, but that during the time of such delay the building would not have had a use or rental value to the plaintiff, then to return a verdict for the defendant. Under the circumstances referred to, the plaintiff would have been entitled to a verdict and judgment for nominal damages and costs, and for that reason it was error to give such instruction."

The measure of damages for wrongful detention or deprivation of property is its usable value. Continental Gin Co. v. Clement et al., 176 Ark. 864, 4 S.W.2d 901, 902, 904; Anderson et al. v. Jensen et al., 71 Utah 295, 265 P. 745; Parsons v. Eisele, 137 Okl. 35, 277 P. 643.

In the case of Constitution Indemnity Co. of Philadelphia v. Armbrust et al., Tex. Civ.App., 25 S.W.2d 176, the contract called for the construction of a home for Armbrust and his wife, and the contractor abandoned the contract and the owners completed the work. Delay of several months in completion resulted from failure of the contractor to complete the house, and the owners sued for damages for this delay, and the jury gave them a verdict for the fair usable value of the house. The defendant contended that it had not been shown that actual damages had been sustained. The court, at page 179, said: "We cannot agree with the proposition that, if the completion of a home is delayed a period of several months, the owner is not entitled to recover the value of the use of the property during that time. The courts do not look with favor on such a contention. The owners assert that by reason of the delay they are entitled to recover the value of the use of the property during such period of delay. This has long been the law. Walsh v. M. E. Church, South, (Tex.Com.App.) 212 S.W. 950."

In cases involving suits for damages for injury to ships, or vessels, the fair value to the owner of use of the vessel of which he was deprived has been made the measure of damages sustained, but, in all such cases, there was sufficient evidence in the record to convince the court that there was an actual useful value to the owner, of which he had been deprived, and that such useful value could be properly measured in money. The Conqueror, 166 U.S. 110, 17 S.Ct. 510, 41 L.Ed. 937; The Cayuga, Fed.Cas.No.2535, 2 Ben. 125 ($75 a day

for damage to a ferry boat), affirmed 14 Wall. 270, 20 L.Ed. 828. In the case of No. 7 Steam Sand Pump Dredger and S. S. Greta Holme (1897) App.Cases 596, the dredger owned by the Harbor Board was employed and used by the Board for the purpose of keeping the Harbor in condition, and it was damaged and sunk in a collision. The Board immediately purchased a new dredge and used it in place of the Greta Holme. Suit for damages was brought on account of the damage to and sinking of the Greta Holme. The Court of Appeals held that no damage in excess of the cost of repairs could be allowed to the Harbor Board because, as the court concluded, none had been sustained. The House of Lords reversed this decision and held that the Harbor Board, as the owner of the vessel injured, was entitled to damages measured by the useful value for the period during which the dredge was necessarily out of use for necessary repairs, and that, in such case, it was not necessary for the Harbor Board to show that it could have made money by using or leasing the dredge for the period during which the Board was deprived of its use. Halsbury, L.C. said (602); "That the dredger was required for their use cannot be denied; that their operations in reducing the silting up were delayed by the loss of it cannot be denied. I know of no reason why the public body are not entitled to the ordinary rights which other people possess of obtaining damages for the damage occasioned by the negligence of the wrong doer." Lord Herschell said:

"I take it to be clear law that in general a person who has been deprived of the use of a chattel through the wrongful act of another is entitled to recover the damages in respect thereof even though he cannot prove what has been called tangible pecuniary loss by which I understand is meant that he is a definite sum of money out of pocket due to the wrong sustained.

"If the appellants had hired a dredger instead of purchasing one and had during the months they were deprived of its use been bound to pay for its hire it cannot be doubted that the sum so paid would have been recovered. How can they the less be entitled to damages because instead of hiring a dredger they invested their money in its purchase?"

The same rule was applied in The Mediana (1900) App.Cases, 113, in which a lightship belonging to the Harbor Board was damaged in a collision. Another ship owned by the Board and maintained for the purpose of such an emergency was used by the Board in place of the damaged lightship until it was repaired. The House of Lords held that the Board was entitled to recover from appellant not only the out of pocket expense for repair of the damage caused by the collision but, also, substantial damage for the loss of the services of the damaged lightship during the period it was necessary to use the other lightship in her place.

The value of loss of use of a Danish warship resulting from a collision was allowed for the period necessary to make repairs in The Astrakhan (1910) LR P. D. 172.

In cases involving delay by a contractor in the completion of a building, the fair rental value of the use of such building has been used and allowed as the fair measure of damages to the owner for loss of earlier use of the building involved. In Wing & Bostwick Co. v. U. S. Fidelity & Guaranty Co., C.C., 150 F. 672, 676, 677, the contract called for completion of a building August 1, 1903, and it was delayed in completion, and the owner brought suit for damages. The court said:

"It is well settled that ordinarily, when there has been a delay in the completion of a building or performance of the work, the rental value of the premises is the true measure of damages. The contract in suit does not specify any penalty, and strictly speaking, time of performance was not of the essence of the contract. Nevertheless, when the construction of a building has been delayed, there being no extension of the time or waiver, the damages are the loss of the rent. [Citing cases.] Evidence was given tending to show that the rental loss of the plaintiff, by reason of its inability for a period of 10 months to occupy the premises, amounted to $2,300 or $250 for each month's delay. * * *, I allow as damages the sum of $200 per month [10 per cent of the cost of the building] from August 1st, the time when the building should have been completed, to April 20th, when I think it was possible for the plaintiff to move into the building; the total amount of such loss being $1,733.-33."

See Cannon v. Hunt, 113 Ga. 501, 511, 38 S.E. 983; Leifer Mfg. Co. v. Gross, 93

Ark. 277, 124 S.W. 1039; Bounds v. Hickerson, 26 Tex.Civ.App. 608, 609, 63 S.W. 887; Smith v. Gunn, 57 Tex.Civ.App. 339, 122 S.W. 919.

The case of Phillips & Colby Construction Company v. Seymour et al., 91 U.S. 646, 23 L.Ed. 341, involved the construction of a railroad for Seymour et al. within a specified time and it was delayed. The court said, 91 U.S. at page 652:

"The attempt [by Seymour et al.] was to show, that, by the use of the road at an earlier day, much profit would have resulted to defendant. But the witness stated that the road ran through a wild, uninhabited country; that he expected that saw-mills would have been established along the line of the road, and the transportation of lumber incident to the use of their mills would have made the defendant a profit of $20,000.

"The whole basis of this calculation is conjectural, uncertain and vague. It is manifestly no safe basis on which it can be assumed that any business would have been done in the few days of the delay; or that, if done, it would have been done at a profit. There was nothing on which a jury could have done anything but conjecture and speculate, at the hazard of sacrificing truth and justice."

What the court said above is applicable in the case at bar. Here we must speculate and conjecture with reference to several matters. We should not open the door for allowance of damages for delay on account of equipment rental any wider than it has been opened by the decisions of this court in Cotton v. United States, supra; Converse et al. v. United States, supra; Phoenix Bridge Company v. United States, supra; and Bahen & Wright, Inc., v. United States, supra.

Plaintiff's claim for rental value as damages sustained should be denied.

JONES, Judge, took no part in the decision of this case.